# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2567

_____

United States of America,

      Plaintiff - Appellee,

      v.

Wilbur Gabe, also known as Charles Gabe,

      Defendant - Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of South Dakota.

_____

Submitted: October 17, 2000

Filed: January 26, 2001

_____

Before McMILLIAN, BOWMAN, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Wilbur Gabe appeals his conviction for three sexual offenses committed against his adopted daughter in Indian country: one count of abusive sexual contact with a child under the age of twelve, and two counts of aggravated sexual abuse. See 18 U.S.C. §§ 1153, 2241(a)(1) and (c), 2244(a)(1), and 2246(2). On appeal, Gabe challenges the admission of the victim's statement to an examining physician identifying Gabe as her abuser, the admission of testimony describing two prior sexual

offenses, the sufficiency of the evidence as to each count of conviction, and the district court's[1] denial of his motion for a new trial. We affirm.

## I. Background.

We will refer to the minor victim as V.G. In May 1998, V.G.'s aunt removed V.G. from Gabe's home, suspecting the fifteen-year-old girl was being abused. Shortly thereafter, V.G. told F.B.I. agent Joseph Weir that Gabe had been sexually abusing her since 1988 or 1989, when she was in the first grade. After further investigation, Gabe was charged with nine counts of sexual abuse against four different victims:

Count I          --  abusive sexual contact with V.G. in 1988 or 1989.
Counts II-VI --  five instances of aggravated sexual abuse of V.G. between August 1996 and May 1998.
Count VII      --  aggravated sexual abuse of Kathleen Tiger in May 1998.
Count VIII    --  abusive sexual contact with Nell Miner in December 1995.
Count IX       --  aggravated sexual abuse of Shannon Cloud in 1991.

Count IX was dismissed before trial as time-barred. At trial, V.G. testified that the abuse began when she was six years old and occurred frequently because her mother left the house twice each week to play bingo. The abuse began with vaginal touching and digital penetration of her vagina and progressed to vaginal and anal intercourse when she was thirteen years old. V.G. described in detail the three incidents underlying Counts I, II, and V, for which Gabe was ultimately convicted. In addition, Kathleen Tiger testified that Gabe raped her the night V.G. was removed from the Gabe home, and Nell Miner testified that Gabe touched her sexually when she visited the Gabe home as a teenager.

---

[1]The HONORABLE CHARLES B. KORNMANN, United States District Judge for the District of South Dakota.

The district court acquitted Gabe on Counts III, IV, and VI because the government failed to prove he used force to cause V.G. to engage in the alleged offenses. See 18 U.S.C. § 2241(a)(1). The jury acquitted Gabe on Counts VII and VIII, the alleged offenses against Kathleen Tiger and Nell Miner. The jury convicted him of the offenses against V.G. charged in Counts I, II, and V. The court denied Gabe's motions for judgment of acquittal and a new trial and sentenced him to 236 months in prison.

## II. The Victim Hearsay Issue.

After V.G. told agent Weir about Gabe's alleged sexual abuse, the F.B.I. and the tribal Department of Social Services referred her to Dr. John B. Jones for a medical examination. Dr. Jones is a board-certified family practitioner to whom authorities in central South Dakota frequently refer suspected sexual abuse victims for medical examinations. At trial, Dr. Jones testified that he discovered substantial physical evidence of sexual abuse over a long period of time, beginning at an early age, and that V.G. told him she had been sexually abused. Gabe did not object to this testimony. However, Gabe did object to Dr. Jones's testimony that V.G. told him Gabe had sexually abused her "from the age of the first grade on to now." The district court admitted this testimony under the medical-treatment hearsay exception, codified in Rule 803(4) of the Federal Rules of Evidence. Gabe challenges this ruling on appeal. We conclude it was error to admit V.G.'s identity statement to Dr. Jones under Rule 803(4), but the error was harmless.[2]

---

[2]The district court also admitted this testimony under the residual hearsay exception found in Rule 807. The government does not defend this ruling on appeal, and wisely so. V.G.'s cumulative hearsay statement to Dr. Jones does not satisfy Rule 807's requirement that "(B) the [hearsay] is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." See United States v. Balfany, 965 F.2d 575, 581-82 (8th Cir. 1992).

Statements made by a patient for purposes of medical diagnosis or treatment are an established exception to the hearsay rule because "a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility." White v. Illinois, 502 U.S. 346, 356 (1992). The statement may relate to the cause of the patient's injury, provided it is "reasonably pertinent to diagnosis or treatment." Rule 803(4). In general, a patient's statement describing how an injury occurred is pertinent to a physician's diagnosis and treatment, but a statement identifying the person who caused the injury "would seldom, if ever, be sufficiently related." United States v. Iron Shell, 633 F.2d 77, 84 (8th Cir. 1980), cert. denied, 450 U.S. 1001 (1981).

In cases of sex abuse, however, the identity of the abuser may be relevant to treating the victim's emotional and psychological injuries. For this reason, we have upheld the admission of hearsay statements identifying the abuser to a physician "where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding." United States v. Renville, 779 F.2d 430, 438 (8th Cir. 1985). But in this case, the government's evidence regarding V.G.'s identity statement to Dr. Jones does not satisfy this rigorous standard. The authorities took V.G. to Dr. Jones for a medical examination shortly after she told an F.B.I. agent that Gabe had sexually abused her. Dr. Jones did not explain to V.G. that identifying her abuser was pertinent to her diagnosis and treatment. Indeed, the identity of V.G.'s abuser was not important to the medical examination Dr. Jones conducted -- Dr. Jones had never seen V.G. before this examination, he did not prescribe any additional medical treatment, and he did not evaluate whether she needed psychological counseling.[3]

---

[3]Dr. Jones knew V.G. was already receiving psychological counseling. Thus, he did not ask V.G. to identify her abuser for the purpose of advising whether she needed psychological counseling, as the testifying physicians did in Renville, 779 F.2d at 438-39, and in Balfany, 965 F.2d at 578.

The government argues that V.G.'s statement to Dr. Jones falls within the medical-treatment hearsay exception because "she was clearly of an age where she understood the physician's role in order to trigger the motivation to provide truthful information." We agree that most adults and older children generally understand a physician's role in providing diagnosis and treatment. But not even an adult necessarily understands the connection between a sex abuser's identity and her medical treatment. Rule 803(4) is premised on the patient's selfish motive in receiving proper medical treatment; therefore, the proponent must establish that the declarant's frame of mind when making the hearsay declaration "was that of a patient seeking medical treatment." Olesen v. Class, 164 F.3d 1096, 1098 (8th Cir. 1999); accord United States v. White, 11 F.3d 1446, 1449-50 (8th Cir. 1993); Ring v. Erickson, 983 F.2d 818, 820 (8th Cir. 1993). Here, the government presented no evidence that V.G. repeated her accusation to Dr. Jones for purposes of medical diagnosis or treatment. Given the context, V.G.'s statement identifying Gabe as her abuser to Dr. Jones is no more reliable than her initial accusation to agent Weir, which the district court properly excluded because V.G. was available to testify at trial. In these circumstances, V.G.'s hearsay declaration identifying Gabe as the abuser to Dr. Jones is, like most such identity statements, inadmissible under Rule 803(4).

Error in admitting a sex abuse victim's out-of-court declarations is subject to harmless error analysis. Balfany, 965 F.2d at 582. In this case, the government's primary trial witness was the victim, V.G. She described at length and in detail various occasions on which Gabe had abused her, including the three incidents underlying the counts of conviction. She was cross examined at length. Gabe did not testify, and no other person witnessed the incidents in question. Thus, the jury could not have convicted Gabe unless it believed V.G.'s trial testimony identifying Gabe as her abuser. When Dr. Jones testified that V.G. had identified Gabe as her abuser during the medical examination, this hearsay was entirely cumulative to V.G.'s earlier trial testimony. Moreover, Dr. Jones's hearsay testimony was cumulative to other hearsay evidence to which Gabe did not object. Psychologist Margaret Pier, who began

-5-

counseling V.G. before her visit to Dr. Jones, explained to the jury that a child who is sexually abused by a family member will frequently keep the abuse a secret for a long time. Ms. Pier then testified on direct examination:

> Q  And you heard her testimony in court again . . . you heard the testimony of [V.G.]?
>
> A  I did.
>
> Q  And was it consistent with the things that she told you?
>
> A  Yes, it was.

And on cross examination:

> Q  Did [V.G.] tell you that FBI Agent Joe Weir was the first person she ever told about this stuff?
>
> A  Yes, she did.

Thus, the jury knew that V.G.'s trial testimony identifying Gabe as her abuser was consistent with what she previously told agent Weir and counselor Pier. In these circumstances, the admission of Dr. Jones's hearsay testimony was harmless error.

### III.  Prior Bad Act Evidence Issues.

Evidence of prior bad acts is generally not admissible to prove a defendant's character or propensity to commit crime. FED. R. EVID. 404(b). However, Congress altered this rule in sex offense cases when it adopted Rules 413 and 414 of the Federal Rules of Evidence. Now, in sexual assault and child molestation cases, evidence that the defendant committed a prior similar offense "may be considered for its bearing on any matter to which it is relevant," including the defendant's propensity to commit such

offenses. FED. R. EVID. 413(a), 414(a). If relevant, such evidence is admissible unless its probative value is "substantially outweighed" by one or more of the factors enumerated in Rule 403, including "the danger of unfair prejudice." United States v. LeCompte, 131 F.3d 767, 769 (8th Cir. 1997). On appeal, Gabe argues the district court erred in admitting testimony describing two prior incidents of sexual abuse. The district court expressly applied Rules 413, 414, and 403 in admitting this evidence with a cautionary instruction. We review these evidentiary rulings for abuse of discretion.

1. The district court admitted under Rule 414 testimony by Holly Thompson that Gabe had sexually abused her some twenty years earlier, when Thompson was seven years old. This incident is similar to Count I, the alleged abusive sexual contact with V.G. when she was in the first grade. V.G. testified that, on that occasion, Gabe was sitting in a rocking chair in their living room, she was laying below him, and he touched her vagina with his finger, first over, then under, her clothes. V.G. cried, but Gabe told her to "shut up" because she would get used to it. Holly Thompson testified that, when she was seven years old, Gabe was visiting her family, and she awakened from a nap when Gabe inserted his finger into her vagina. Gabe told her to be quiet and continued touching her until they "heard footsteps coming down our hallway and then he removed his finger, or his hand. And he got up and then he walked out of the bedroom like nothing happened."

A court considering the admissibility of Rule 414 evidence must first determine whether the evidence has probative value, recognizing "the strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." LeCompte, 131 F.3d at 769. We agree with the district court that Holly Thompson's testimony is highly probative. The abuse alleged by Thompson was almost identical to the abuse of V.G. alleged in Count I. Both were young girls of six or seven years at the time of the offenses; both were related to Gabe; and the sexual nature of the offenses was similar. See United States v. Guardia, 135 F.3d 1326, 1331 (10th Cir. 1998). The court must next balance that probative value against the risk of unfair prejudice (and

any other pertinent Rule 403 factor). Rule 403 is concerned only with "unfair prejudice, that is, an undue tendency to suggest decision on an improper basis." United States v. Yellow, 18 F.3d 1438, 1442 (8th Cir. 1994). Holly Thompson's testimony is prejudicial to Gabe for the same reason it is probative -- it tends to prove his propensity to molest young children in his family when presented with an opportunity to do so undetected. Because propensity evidence is admissible under Rule 414, this is not *unfair* prejudice. Moreover, "[b]ecause the evidence [of prior abuse] was so similar to [one of] the acts charged, it would not be so facially inflammatory as to unduly divert attention from the issues of the case." United States v. Butler, 56 F.3d 941, 944 (8th Cir. 1995).

Gabe argues that Holly Thompson's testimony was unfairly prejudicial because the twenty-year lapse of time both diluted its probative value and prevented Gabe from effectively defending against her accusation. When Rule 414 was enacted, Congress expressly rejected imposing any time limit on prior sex offense evidence.[4] The passage of time certainly raises reliability issues. One is whether the accuser's memory has faded. But it is reasonable to assume that a victim of child abuse is not likely to forget such a traumatic event. And here, Holly Thompson testified in detail about the incident and was vigorously cross examined on the reliability of her memory. For example, Thompson testified that she was wearing "yellow stretch pants with a white shirt with flowers or something around the sleeves." On cross exam, defense counsel asked:

> Q: Okay. Twenty years ago you can remember that you had yellow stretch pants and a white shirt?
>
> A: Yes, I can.

---

[4]See 140 CONG. REC. H8,992 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari) ("evidence of other sex offenses by the defendant is often probative and admitted, notwithstanding very substantial lapses of time in relation to the charged offense or offenses").

Q:     Can you remember what you were wearing three weeks ago on this date?

        \*     \*     \*     \*     \*

A:     I had black web pants with a Mickey Mouse shirt with my white tennis shoes.

The passage of time can also make it difficult to find third party witnesses and extrinsic evidence to counter the alleged prior sexual offense.  But here, Thompson, like V.G., accused Gabe of furtive abuse carefully committed outside the presence of others. Extrinsic evidence was unlikely to be persuasive, and Gabe was free to take the stand to refute both accusers.  That he elected not to testify is not unfair prejudice.

For all of these reasons, we find the district court did not abuse its discretion in admitting Holly Thompson's testimony under Rule 414.  See United States v. Meacham, 115 F.3d 1488, 1495 (10th Cir. 1997) (child molestation occurring 25-30 years before trial admissible under either Rule 404(b) or Rule 414); United States v. Larson, 112 F.3d 600, 605 (2d Cir. 1997) (sex abuse occurring 16-20 years before trial admissible under Rule 414).

2.  The district court admitted under Rule 413 testimony by Shannon Cloud, an adult, that Gabe attempted to rape her in 1991.  Cloud's testimony was admitted because the underlying circumstances were similar to Count VII, Gabe's alleged aggravated sexual abuse of Kathleen Tiger in May 1998.  Gabe was acquitted of that charge, so obviously the jury was not unfairly prejudiced in considering the one count to which Cloud's testimony was relevant.  That testimony could not have unfairly prejudiced Gabe's defense of the totally unrelated charge that he sexually abused V.G. as a child.

## IV. Sufficiency and New Trial Issues.

Gabe argues the district court erred in denying his motion for judgment of acquittal because the evidence is insufficient to convict on all three counts. "The verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to conclude guilt beyond a reasonable doubt. Decisions regarding credibility of witnesses are to be resolved in favor of the jury's verdict." United States v. Eagle, 133 F.3d 608, 610 (8th Cir. 1998).

Gabe first argues the evidence is insufficient to convict him of Count I, abusive sexual contact of V.G. when she was in the first grade, because there is no evidence corroborating V.G.'s testimony that Gabe abused her. However, a victim's testimony alone is sufficient to persuade a reasonable jury of the defendant's guilt beyond a reasonable doubt. United States v. Wright, 119 F.3d 630, 633-34 (8th Cir. 1997). Gabe further argues there is no evidence he used force in committing this offense. However, force is not an element of abusive sexual contact when the crime is committed against a minor under the age of twelve in Indian country. See 18 U.S.C. §§ 2241(c), 2244(a)(1).

Gabe next argues the evidence is insufficient to convict him of the aggravated sexual abuse alleged in Counts II and V because there is no evidence he used force to cause V.G. to engage in these sexual acts. Force is an element of the offense of aggravated sexual abuse. 18 U.S.C. § 2241(a)(1). The requisite force is established "if the defendant overcomes, restrains, or injures the victim or if the defendant uses a threat of harm sufficient to coerce or compel submission." Eagle, 133 F.3d at 610. Counts II and V involved two incidents in which Gabe had vaginal intercourse with V.G. The girl testified that Gabe had previously struck both V.G. and her mother, and that she obeyed him during these incidents because she was afraid of him. Cf. United States v. Knife, 9 F.3d 705, 706-07 (8th Cir.1993). As to the second incident, V.G. testified that Gabe forced her to have sexual intercourse without her consent. Finally,

Dr. Jones testified that these sexual acts would have been painful to V.G. We agree with the district court this evidence is sufficient for a reasonable jury to conclude, beyond a reasonable doubt, that force was used to accomplish the sexual abuse charged in Count II and Count V. Cf. Eagle, 133 F.3d at 610.

Finally, Gabe argues the district court erred in denying his motion for a new trial. See FED. R. CRIM. P. 33. The district court "should grant a new trial only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." United States v. Brown, 956 F.2d 782, 786 (8th Cir. 1992). We affirm the denial of a new trial unless it was "a clear and manifest abuse of discretion." Id. at 786. Gabe argues a new trial is warranted because V.G. was not a credible witness. The district court concluded that Gabe's attacks on V.G.'s credibility had failed, "the credibility of the witnesses weighs in favor of the verdict and the Court cannot conclude that a miscarriage of justice occurred." We decline to second-guess that court's evaluation of witness credibility. Having carefully considered the entire trial record, we conclude the district court did not abuse its discretion in denying Gabe's motion for a new trial.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.