# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 06-3076

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Wade LaSalle Beck, also known | * | |
| as Charles Dorsey, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  June 15, 2007
Filed:  August 3, 2007

_____

Before MELLOY, SMITH and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Wade LaSalle Beck ("Beck") appeals from a conviction for bank robbery in violation of 18 U.S.C. § 2113 and a 210-month sentence imposed by the district court.[1]

_____

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

On August 17, 2005, a man carrying a cardboard box and a briefcase entered the Commercial Federal Bank in Omaha and approached a teller window. He handed the teller, Catherine Workman, a note that read, "I have a bomb." The note was handwritten on what police later identified as a Qwest Communications promotional leaflet. The man told Workman, "Give me all your money," and Workman handed him some of the money in the drawer. The man then said, "No, I want all of it." Workman gave the man all of the money in the drawer, totaling $2,899.00, including ten marked bills. The robber left the bank, leaving the demand note behind.

Immediately after the robbery, Workman provided the police with a detailed description of the bank robber. When police presented Workman with a photo lineup that did not include a picture of Beck, she identified someone other than Beck as the bank robber. At trial, when questioned why she chose that picture, Workman testified that she thought she had to choose one of the pictures, so she did. However, she identified Beck in the courtroom as the bank robber.

At trial, the Government presented fingerprint evidence that matched Beck's fingerprints to those taken from the robber's demand note. Although fingerprints also had been obtained from the bank door, they were not compared with Beck's prints. The Government also offered testimony from three of Beck's friends and relatives, each of whom independently had identified Beck from bank surveillance video and photographs televised after the robbery.

In addition, the Government introduced evidence obtained from Beck's vehicle at the time of his arrest, including a black briefcase that held $14,890, fliers from Qwest similar to that on which the demand note had been written, and a notebook that contained a handwritten reference to the Commercial Federal Bank in Omaha. An FBI agent testified that he questioned Beck about the robbery and Beck responded that he did not "recall" robbing a bank in Omaha. The defense offered no evidence, and the jury returned a guilty verdict.

At sentencing, the FBI agent testified that Beck admitted to several prior arrests and convictions, including convictions for rape, auto theft, and possession of heroin with intent to distribute. The Government presented the district court with certified copies of these and several other prior convictions, along with documents regarding a petition to revoke probation that had been found in Beck's vehicle. Accordingly, the district court classified Beck as a career offender under U.S.S.G. § 4B1.1,[2] overruling Beck's objection to the presentence investigation report ("PSR"), and calculated an advisory sentencing guidelines range of 210 to 240 months. Beck requested a departure from the sentencing guidelines on the basis that two of his prior convictions were for only small quantities of controlled substances, but the court declined to depart and sentenced Beck to 210 months' imprisonment. Beck filed the instant appeal. For the following reasons, we now affirm.

Beck challenges the sufficiency of the evidence, arguing that the Government lacks fingerprint evidence directly linking Beck to the scene of the robbery and that the primary eyewitness, Workman, failed to describe Beck's prominent gold tooth and later identified someone other than Beck in a photo lineup. We review the sufficiency of the evidence supporting a conviction in the light most favorable to the Government and draw all reasonable inferences in favor of the jury's verdict. *United States v. Espino*, 317 F.3d 788, 792 (8th Cir. 2003). The standard of review is "very strict," *id.* at 791, and we will reverse the conviction only if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt, *United States v. Hollins*, 432 F.3d 809, 811 (8th Cir. 2005).

---

[2]Section 4B1.1(a) states:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

We find the evidence is sufficient to support the jury's finding of guilt beyond a reasonable doubt. The Government produced fingerprint evidence that matched Beck's fingerprints to the demand note used in the robbery. Three of Beck's friends and relatives, all of whom had known Beck for at least six years, recognized him as the bank robber in televised broadcasts of surveillance photos from the robbery, and Workman identified Beck as the bank robber in court. At his arrest, police discovered a substantial amount of cash, as well as Qwest flyers similar to that on which the demand note was written and a notebook referencing the Commercial Federal Bank in Omaha. Furthermore, when questioned about the robbery, Beck neither denied the charges nor offered an alibi, but rather he responded that he could not "recall" robbing a bank. In light of all this evidence, a reasonable jury could find Beck guilty beyond a reasonable doubt. *See Hollins*, 432 F.3d at 811-12 (finding the evidence sufficient where three witnesses identified the defendant, who fit the physical characteristics of the suspect as determined from surveillance video and possessed boots matching those worn during the robbery).

Beck also challenges the 210-month sentence imposed by the district court, alleging that it is inconsistent with the sentencing goals listed in 18 U.S.C. § 3553(a) because his prior narcotics convictions involved the sale of only small quantities for which he received minimal sentences. Beck does not challenge directly his classification as a career offender or the district court's calculation of his advisory sentencing guidelines range. Thus, we review his sentence for reasonableness, akin to review for an abuse of discretion. *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006).

We find that the district court did not abuse its discretion when it sentenced Beck at the low end of the properly calculated advisory guidelines range to 210 months in prison. Because the sentencing guidelines were developed after years of careful study and account for other § 3553(a) factors, sentences within the sentencing guidelines are presumptively reasonable. *United States v. Vasquez*, 433 F.3d 666, 670

(8th Cir. 2006), *cert. denied*, ---U.S.---, 127 S. Ct. 3041 (2007); *see also Rita v. United States*,---U.S.---,127 S. Ct. 2456, 2462 (2007).  However,

> a sentence within an advisory guidelines range may be unreasonable if the sentencing court: (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment.

*Vasquez*, 433 F.3d at 671.

The record does not suggest that the district court ignored or improperly weighed the nature of Beck's prior convictions when imposing Beck's sentence. Although Beck argues that the quantities of narcotics in his several previous narcotics convictions were "small," these quantities were sufficient to support the convictions. In addition, Beck's drug quantity argument does not address his auto theft and rape convictions.  *See United States v. Walker*, ---F.3d---, No. 06-3137, slip op. at 7 (8th Cir. Jul. 20, 2007) (stating that auto theft constitutes a crime of violence for purposes of determining career offender status); U.S.S.G. § 4B1.2 cmt. n.1 ("'Crime of violence' includes . . . forcible sex offenses . . .").  Therefore, we find that the district court did not abuse its discretion in imposing a within-guidelines sentence.

Accordingly, we affirm Beck's conviction and sentence.

_____