# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2085

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Maurice Hollow Horn, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 15, 2008
Filed: April 25, 2008

_____

Before WOLLMAN and SMITH, Circuit Judges, and GRITZNER,[1] District Judge.

_____

SMITH, Circuit Judge.

Following a jury trial, Maurice Hollow Horn was convicted of two counts of abusive sexual contact, in violation of 18 U.S.C. §§ 1153, 2244(a)(1), 2241(c), and 2246(3). The district court[2] denied Hollow Horn's motion for new trial and sentenced him to concurrent terms of 34 months' imprisonment. Hollow Horn appeals. We affirm.

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

[2]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

## I. *Background*

In light of the applicable standard of review, the following facts are recounted in the light most favorable to the verdict. *United States v. Reddest*, 512 F.3d 1067, 1069 (8th Cir. 2008). During a 2004–2005 FBI investigation of Hollow Horn for suspected sexual misconduct against a young girl, two other girls—R.R.A. and H.C.—informed law enforcement officers that Hollow Horn had inappropriately touched them at a birthday party in 1999. At the time of the alleged inappropriate touching, both R.R.A. and H.C. were under twelve years of age.

On June 21, 2006,[3] Hollow Horn was indicted on two counts of abusive sexual contact—one count each relating to R.R.A. and H.C. Each count in the indictment charged:

> On or about between the 1st day of July, 1999, and the 31st day of July, 1999, at Cherry Creek, in Indian Country, in the District of South Dakota, Maurice Hollow Horn, an Indian, did knowingly cause or attempt to cause [name redacted], a child under the age of twelve, to engage in sexual contact, that is, the intentional touching of her genitalia, groin, anus, and inner thigh, with the intent to abuse, humiliate, harass, and degrade [name redacted], and to arouse and gratify his own sexual desire, in violation of 18 U.S.C. §§ 1153, 2244(a)(1), 2241(c), and 2246(3).

At trial, the evidence established that in July 1999, several girls attended the 10th birthday party for Hollow Horn's daughter, Maurisa. The girls included R.R.A., who is Maurisa's first cousin (and Hollow Horn's niece) and H.C., who is Maurisa's second cousin (and the daughter of Hollow Horn's first cousin, Laudine). The party

---

[3]Hollow Horn was originally indicted on September 14, 2005, with three counts asserting alleged sexual offenses. That indictment was subsequently dismissed without prejudice, and Hollow Horn was re-indicted on June 21, 2006, with the two charges at issue in this case.

began at Hollow Horn's home. The adults also set up a tent outside of Maurisa's grandmother's home a few hundred yards away, so that the girls could have a sleep-over. Five girls from the party started out in the tent that night, including Maurisa, R.R.A., and H.C. However, R.R.A.—who was 7 years old at the time—became scared, left the tent, and went into her grandmother's house to sleep on the couch.[4] The other four girls spent the night in the tent.

R.R.A. testified that as she began to doze off on the couch, Hollow Horn (her uncle) entered the room wearing only his underwear and sat down on the couch near her feet. R.R.A. testified that Hollow Horn removed her covers and touched her vagina, rubbing it in an "up and down" motion with his hand over her panties but underneath the long shirt that she was wearing. Hollow Horn continued this rubbing for a couple of seconds before R.R.A. kicked him in the side, causing him to stop. Hollow Horn then placed the covers back on R.R.A., told her to be quiet and go back to sleep, and walked out of the room. Although her grandmother was in the house, R.R.A. did not yell out or otherwise call for help because she was scared of Hollow Horn. R.R.A. testified that her fear also prevented her from reporting the incident to her family or the police.

H.C., who was 10 years old at the time of the party, testified that she was asleep inside the tent with the three other girls, when she was awakened by someone rubbing her breasts in a circular motion. H.C. testified that she opened her eyes when she felt someone lift up her nightgown, exposing her stomach, and she saw Hollow Horn trying to remove her panties. At that point, but before her panties were removed, H.C. told Hollow Horn to stop, and he complied. Hollow Horn then left the tent without speaking. Although there were three other girls in the tent, H.C. testified that she did not call out for help or otherwise wake up the other girls because she was scared. As with R.R.A, H.C.'s fear prevented her from reporting this incident at that time.

---

[4]Maurisa's grandmother was also R.R.A.'s grandmother.

After an offer of proof by the government, the district court, over Hollow Horn's objection, allowed H.C.'s mother, Laudine, to testify pursuant to Federal Rule of Evidence 413. Laudine testified that Hollow Horn raped her at a New Year's Eve party on the night of December 31, 1987 or early morning of January 1, 1988, when Laudine was 20 years old. Laudine testified that she became intoxicated at the party and passed out. When she came to, she found her pants at her ankles, her shirt pulled up, and Hollow Horn—her first cousin—having sex with her. Laudine testified that she told Hollow Horn to get off of her, and he moved back, pulled up his pants, and watched as she got dressed. According to Laudine, she tried telling other people present in the home, but they were too intoxicated to help. Laudine then ran down the street to the home of Delores Curley,[5] a friend whose husband was a police officer. Laudine told Curley what had happened, and the police were notified. The police took a report from Laudine and transported her to the hospital for an examination. After Laudine's police report was filed, a tribal prosecution was commenced, but Laudine subsequently withdrew the complaint due to pressure from her mother. In withdrawing the complaint, Laudine did not recant her allegation. Nevertheless, after the complaint was withdrawn, Hollow Horn was not prosecuted for the alleged rape. Laudine further testified that she would not have consented to sex with Hollow Horn.

After the government rested, the defense called 12 witnesses, most of whom had been at the 1999 birthday party, including the other young girls at the party. The defense witnesses generally testified that they were unaware of any sexual contact between Hollow Horn and R.R.A. or H.C. Hollow Horn also took the stand. He testified that he had not had any sexual contact with either R.R.A. or H.C. and denied that he had gone to the tent site or Maurisa's grandmother's house on the night of the birthday party. Hollow Horn's testimony confirmed that he had been at the same New Year's party as Laudine on December 31, 1987 and January 1, 1988, but he denied that he had sex or any sexual contact with Laudine.

---

[5]Delores Curley is also referred to in the briefs and record as Delores Quilt.

The jury subsequently found Hollow Horn guilty on both counts of abusive sexual contact—one count each relating to his contact with R.R.A. and H.C. On January 4, 2007, more than three months after Hollow Horn's conviction, but prior to his sentencing, Delores Curley, who had testified at the trial, sent a letter to defense counsel stating that she believed that R.R.A.'s parents had coached the girl's testimony, based on statements Curley claimed that she heard the girl's parents make to R.R.A. while they were all in the witness room prior to and after R.R.A.'s testimony. The district court postponed Hollow Horn's sentencing to allow the defense to investigate Curley's claim. Thereafter, Curley signed an affidavit in which she averred that before R.R.A.'s testimony, Curley overheard R.R.A.'s father ask the girl: "Remember what you're supposed to say?"; and that when R.R.A. returned from testifying, R.R.A.'s mother asked: "Did you say what we told you to say?"

Hollow Horn moved for a new trial based on the newly discovered evidence, and the district court conducted an evidentiary hearing. Curley testified at the hearing that she wrote the letter because she did not want Hollow Horn to be imprisoned based upon manufactured testimony. Curley admitted that although R.R.A. was the government's first witness and that Curley was the last witness, she did not inform counsel for either side or the court of the alleged coaching until over three months after Hollow Horn's conviction. Curley also acknowledged that her letter to defense counsel had been written at the behest of Hollow Horn's mother and that the letter was faxed to defense counsel by Hollow Horn's sister.

R.R.A.'s parents also testified at the evidentiary hearing. Her father denied making the alleged statements or any similar comments. He testified that he simply told R.R.A. to not be scared, but that he did not tell R.R.A. what to say and did not tell her to accuse Hollow Horn. The father also testified that he had not heard R.R.A.'s mother tell or suggest to R.R.A. what to say. R.R.A.'s mother also testified, and she likewise denied making the alleged statements or anything similar. The mother confirmed that the government had informed her and her husband that they could not

talk to each other about the trial when they were in the witness room, and she denied that she did anything to interfere with Hollow Horn's right to a fair trial or that her dislike for Hollow Horn would cause her to do so.

The district court denied Hollow Horn's motion for a new trial. Subsequently, the district court sentenced Hollow Horn to 34 months' imprisonment on each count, with the sentences to run concurrently.

## II. *Discussion*

Hollow Horn raises three issues on appeal and argues that each should result in vacation of his convictions. First, he contends that the district court improperly admitted allegations of prior sexual misconduct by Hollow Horn under Federal Rule of Evidence 413. Second, he asserts that the district court erroneously denied his motion for new trial based on newly-discovered evidence that one of the alleged victims' testimony was coached by her parents. And lastly, he contends that the evidence presented was insufficient to convict him beyond a reasonable doubt.

### A. *Admission of Rule 413 Evidence*

As stated above, the district court, over Hollow Horn's objection, allowed H.C.'s mother, Laudine, to testify pursuant to Federal Rule of Evidence 413, that Hollow Horn had raped her in 1988. On appeal, Hollow Horn argues that the district court erred in admitting Laudine's testimony regarding his alleged rape of her. The district court admitted the evidence under Rules 413 and 403 and gave a limiting instruction to the jury. We review these evidentiary rulings by the district court for abuse of discretion. *United States v. Crawford*, 413 F.3d 873, 875–76 (8th Cir. 2005); *United States v. Gabe*, 237 F.3d 954, 959 (8th Cir. 2001).

"Evidence of prior bad acts is generally not admissible to prove a defendant's character or propensity to commit crime." *Gabe*, 237 F.3d at 959 (citing Fed. R. Evid. 404(b)). Congress, however, modified this rule in sex offense cases when it adopted

Rules 413 and 414 of the Federal Rules of Evidence.[6] *Id.* In sexual assault and child molestation cases, "evidence that the defendant committed a prior similar offense 'may be considered for its bearing on any matter to which it is relevant,' including the defendant's propensity to commit such offenses." *Id.* (citing Fed. R. Evid. 413(a), 414(a)); *see also Crawford*, 413 F.3d at 875 ("Assuming the prior [sex] offenses are relevant, Rule 413 supersedes Rule 404's prohibition against character evidence."). If the evidence of the defendant's prior sexual offense is relevant, "the evidence is admissible unless its probative value is 'substantially outweighed' by one or more of the factors enumerated in Rule 403, including 'the danger of unfair prejudice.'" *Gabe*, 237 F.3d at 959 (citing *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997)).

Federal Rule of Evidence 413(a) states: "In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant." The definition of an "offense of sexual assault" for purposes of Rule 413, includes, among other things: "contact, without consent, between any part of the defendant's body . . . and the genitals or anus of another person," as well as "an attempt . . . to engage in [such] conduct . . . ." Fed. R. Evid. 413(d). Laudine's testimony qualifies as Rule 413 evidence because it is evidence that Hollow Horn committed another offense of sexual assault. Hollow Horn was charged with abusive sexual contact, which undeniably meets the definition of an offense of sexual assault.[7] But, as discussed above, to be

---

[6]Federal Rules of Evidence 413 and 414 are substantially similar except that Rule 413 applies to the admissibility of evidence of prior "offenses of sexual assault," whereas Rule 414 applies to the admissibility of evidence of prior "offenses of child molestation."

[7]Hollow Horn contends that evidence of prior sexual assaults admissible under Rule 413 should not also be admissible in child molestation cases because, if that were the case, Rule 414—which admits evidence of prior child molestation offense in criminal cases where the defendant is accused of a child molestation offense—would

admissible, the Rule 413 evidence must also be relevant and its probative value must not be substantially outweighed by the danger of unfair prejudice. *Gabe*, 237 F.3d at 959 ("If relevant, [Rule 413] evidence is admissible unless its probative value is 'substantially outweighed' by one or more of the factors enumerated in Rule 403, including 'the danger of unfair prejudice.'").

The district court found that Hollow Horn's alleged rape of Laudine was relevant, and that its probative value outweighed the danger of unfair prejudice.[8] Hollow Horn's alleged rape of Laudine occurred approximately 11 and a half years prior to the date of Hollow Horn's alleged abusive sexual contact with R.R.A. and H.C., and the alleged rape was of a 20 year old, not a child. Nonetheless, we agree with the district court that the evidence was relevant and probative. Both offenses involved sexual assaults of defenseless victims. The instant charges involve Hollow Horn's alleged sexual assault of sleeping minor victims, and the earlier alleged rape also involved an unconscious victim. Furthermore, Hollow Horn was related to all three alleged victims. Additionally, in all three instances, the accusers testified that once they realized what Hollow Horn was doing, they took action, either verbally or

---

be subsumed by Rule 413; all evidence admissible under Rule 414 would already be admissible under Rule 413. Hollow Horn's argument fails, however, because Rule 414(c) expressly states that "[t]his rule shall not be construed to limit the admission or consideration of evidence under any other rule."

[8]In ruling on the admissibility of the Rule 413 evidence, the district court first made a record of the proposed evidence out of the presence of the jury, and then made a clear record of the factors it weighed in reaching its determination. These factors included: (1) Rule 413 did not contain a time limitation; (2) the Rule is intended to be interpreted broadly; (3) the probative value of the evidence was not overcome by its prejudice; and (4) the similarity between the circumstances of assault upon the testifying witness and the alleged assaults upon the present victims, and the factual similarities of the Defendant's actions in the separate assaults. The method employed by the district court was procedurally sound and created a clear record for appellate review.

physically, to make him stop, and he did so. Thus, the district court did not abuse its discretion in ruling that the Rule 413 evidence was relevant.

We must next decide whether the probative value of Laudine's testimony was "substantially outweighed by its potential for unfair prejudice." *United States v. Withorn*, 204 F.3d 790, 794 (8th Cir. 2000). Laudine's testimony was undoubtedly prejudicial to Hollow Horn as evidence admitted under Rule 413 is very likely to be. Rule 403, however, "is concerned only with 'unfair prejudice, that is, an undue tendency to suggest decision on an improper basis.'" *Gabe*, 237 F.3d at 960 (quoting *United States v. Yellow*, 18 F.3d 1438, 1442 (8th Cir.1994)). Laudine's testimony is prejudicial to Hollow Horn for the same reason it is probative—it tends to prove his propensity to commit sexual assaults on vulnerable female members of his family when presented with an opportunity to do so undetected. *See Gabe*, 237 F.3d at 960 (finding witness's testimony that defendant sexually molested her 20 years earlier admissible under Rule 414, stating that the "testimony is prejudicial . . . for the same reason it is probative—it tends to prove his propensity to molest young children in his family when presented with an opportunity to do so undetected"). Because this specific type of propensity evidence is admissible under Rule 413, Hollow Horn has not shown that its prejudice was *unfair. See id.* (ruling that because Rule 414 evidence is admissible to prove propensity, the resulting prejudice from the admission of the Rule 414 evidence was not "*unfair* prejudice").

Although the prior sexual assault alleged against Hollow Horn was over 11 years prior to the alleged sexual offenses at issue here, "Congress expressly rejected imposing any time limit on prior sex offense evidence," when it enacted Rule 413. *Id.* (citing 140 CONG. REC. H8968-01, H8992 (daily ed. Aug. 21, 1994) (statement by Rep. Molinari) ("No time limit is imposed on the uncharged offenses for which evidence may be admitted; as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding very substantial lapses of time in relation to the charged offense or offenses.")). Further, we have

previously held that a district court did not abuse its discretion in admitting Rule 414 evidence despite a 20-year lapse in time between the prior act and the current one. *See Gabe*, 237 F.3d at 960 (finding no abuse of discretion in district court's allowance under Rule 414 of witness's testimony that defendant, who was on trial for child molestation offenses, had molested her 20 years earlier). Additionally, despite the passage of time in this case, the district court also found Laudine's testimony to be credible.

"There is a strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." *Crawford*, 413 F.3d at 876 (quoting *LeCompte*, 131 at 769). Moreover, the district court gave a limiting instruction thereby decreasing the danger that Hollow Horn was *unfairly* prejudiced by Laudine's testimony.[9] *See id.* ("Limiting instructions decrease the danger of unfair prejudice"). For all of these reasons, we hold that the district court did not abuse its discretion in allowing Laudine's testimony.

---

[9]After Laudine's direct examination at trial, but prior to her cross-examination, the district court instructed the jury, stating:

> Ladies and gentlemen of the jury, . . . this is evidence that is received for a limited purpose only. Congress passed a rule that said that in cases of alleged sexual assaults that evidence of other alleged sexual assaults may be admissible in evidence.

> It's -- it doesn't mean that the Defendant is guilty of the crimes for which he's on charge here. But the jury can give this evidence plus the cross-examination, of course, as much weight as you want to give it. And so that's the purpose of this evidence.

> Normally, as I said before, the fact that you were speeding five years ago doesn't mean that you were speeding yesterday or something of that nature, okay?

Trial Transcript 138:24–139:11.

## B. *Motion for New Trial*

Hollow Horn next argues that the district court erred in denying his motion for new trial. Upon a defendant's motion, a court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Hollow Horn sought a new trial on the basis of newly discovered evidence—Curley's allegations that R.R.A.'s testimony was "coached" by her parents.

> Abuse of discretion is the standard under which we review the denial of a defendant's motion for a new trial based on newly discovered evidence. To prevail on such a motion, the defendant must prove that (1) the evidence was unknown or unavailable at the time of trial, (2) the defendant did not lack diligence in attempting to uncover it, (3) the newly found evidence is material, and (4) the evidence is likely to produce an acquittal if a new trial is granted. The motion is properly denied if the newly discovered evidence is merely cumulative or impeaching.

*United States v. Grover*, 511 F.3d 779, 783 (8th Cir. 2007) (citations omitted).

The standard for a new trial on the basis of newly discovered evidence "is rigorous because these motions are disfavored." *United States v. Baker*, 479 F.3d 574, 577 (8th Cir. 2007) (internal quotations and citations omitted). The newly discovered evidence in this case would not have exculpated Hollow Horn, the evidence would have only served to impeach R.R.A.'s testimony. Because a defendant's motion for new trial "is properly denied if the newly discovered evidence is merely . . . impeaching," *Grover*, 511 F.3d at 783, the district court did not abuse its discretion in denying the motion for new trial.

## C. *Sufficiency of the Evidence*

Lastly, Hollow Horn challenges the sufficiency of the evidence supporting his convictions. "We review the sufficiency of the evidence supporting a conviction in the light most favorable to the Government and draw all reasonable inferences in favor

of the jury's verdict." *United States v. Beck*, 496 F.3d 876, 878 (8th Cir. 2007). This "standard of review is 'very strict,' and we will reverse the conviction only if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt." *Id.* at 879 (quoting *United States v. Espino*, 317 F.3d 788, 791 (8th Cir. 2003)).

Hollow Horn was convicted of abusive sexual contact, in violation of 18 U.S.C. §§ 1153, 2244(a)(1), 2241(c), and 2246(3).[10] The applicable version of sections 1153 and 2244(a)(1)—by reference to 2241(c)—made it unlawful, for an Indian within Indian country, to knowingly engage in abusive sexual contact with a person under twelve years of age, or attempt to do so.[11] Thus, the essential elements of abusive

_____

[10]Because Hollow Horn was charged with crimes that were alleged to have occurred in 1999, the criminal statutes and Guidelines applicable at that time apply to this case.

[11]18 U.S.C. § 2244(a)(1), as it stood in 1999, defined "Abusive sexual contact," by reference to 18 U.S.C. § 2241. The applicable version of § 2244(a)(1) stated, in pertinent part:

> Whoever, in the . . . territorial jurisdiction of the United States . . . , knowingly engages in or caused sexual contact with or by another person, if so to do would violate–
>
> (1) section 2241 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than ten years, or both;

18 U.S.C. § 2244(a)(1) (1999).

Section 2241, referenced in § 2244(a)(1), listed three different types of sexual acts, which under § 2244(a)(1) would be "abusive sexual contact " if the "sexual contact [had] been a sexual act." 18 U.S.C. §§ 2244(a)(1), 2241 (1999). Section 2241(c), as relevant here, stated:

sexual contact, as alleged against Hollow Horn, are that he: (1) knowingly and intentionally engaged in sexual contact with a person under the age of 12; (2) intended to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; (3) is an Indian; and (4) committed the act in Indian country. 18 U.S.C. §§ 1153, 2244(a)(1), 2241(c), and 2246(3) (1999); *see also United States v. Lee*, 232 F.3d 653, 655 (8th Cir. 2000) (listing elements of abusive sexual contact, citing 18 U.S.C. §§ 1153, 2244(a)(1), and 2246(3)). Because Hollow Horn stipulated to the third and fourth elements, only the first two elements are at issue.

In support of one count of conviction, R.R.A. testified that Hollow Horn rubbed her vagina, under her long shirt, but over her panties, in an "up and down" motion, for a couple of seconds before she kicked him to make him quit. Section 2246(3) defines the term "sexual contact" as including "the intentional touching either directly *or through clothing*, of the genitalia . . . with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." (emphasis added). Thus, R.R.A.'s testimony constituted sufficient evidence on the first element—that Hollow Horn knowingly and intentionally engaged in sexual contact with her.

Hollow Horn next argues that the government failed to prove the second element of the offense by offering no evidence of intent. "The absence of such evidence, however, is no defect in the government's case where the contact alleged is so clearly sexual that the jury may infer the defendant's intent." *Lee*, 232 F.3d at 655 (holding that victim's testimony that defendant touched and rubbed her genital area at night while he believed she was asleep, viewed in the light most favorable to the

---

> Whoever . . . in the . . . territorial jurisdiction of the United States . . . knowingly engages in a sexual act with another person who has not attained the age of 12 years . . . , or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or life.

18 U.S.C. § 2241(c) (1999).

verdict, and in the absence of any suggestion that the touching occurred for a non-sexual purpose, such as the administering of medication, sufficiently implied defendant's intent); *see also United States v. Demarrias*, 876 F.2d 674, 676 (8th Cir.1989) ("[Abusive sexual contact] encompasses some types of contact which by their nature are sexual acts, and therefore require no showing of intent."). Accordingly, Hollow Horn's conviction is supported by sufficient evidence on the abusive sexual contact count related to his touching of R.R.A.

Likewise, there was sufficient evidence to support Hollow Horn's conviction for the abusive sexual contact against H.C. She testified that she was wearing a long nightgown, bra and panties when she went to sleep in the tent, and that after falling asleep, she was awakened by someone rubbing her breasts in a circular motion. H.C. then felt someone lift up her nightgown and opened her eyes to see Hollow Horn trying to remove her panties.

H.C.'s testimony did not establish that Hollow Horn intentionally touched her genitalia, anus, groin, or inner thigh, as the indictment charged; however, Hollow Horn's indictment charged him with abusive sexual contact or an attempt to commit abusive sexual contact. Further, abusive sexual contact, as defined by the applicable versions of 18 U.S.C. §§ 2244(a)(1) and 2241(c), includes attempted violations of those crimes.

H.C.'s testimony that Hollow Horn rubbed her breasts, lifted her nightgown, and tried to remove her shorts supports both the sexual nature of the act, *Lee*, 232 F.3d at 655, and that Hollow Horn took a substantial step toward commission of the crime. *See United States v. Wagner*, 884 F.2d 1090, 1095 (8th Cir. 1989) ("A substantial step . . . must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime"). Because an attempt to commit abusive sexual contact is sufficient for a conviction, we hold that there is

sufficient evidence to support Hollow Horn's conviction for abusive sexual contact against H.C.

Hollow Horn's other insufficient evidence arguments are based on contradictions in testimony and alleged unreliable witnesses. These arguments are meritless as it is the jury's province to determine the credibility of witnesses, which "we cannot second-guess." *United States v. Birdine*, 515 F.3d 842, 844 (8th Cir. 2008) (rejecting defendant's sufficiency of the evidence argument based on unreliable testimony).

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____