# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1674

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Norris James Lohnes, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 12, 2008
Filed: February 12, 2009

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Norris James Lohnes challenges the sufficiency of the evidence presented by the government to support his convictions for aggravated sexual abuse and sexual abuse of a child. We affirm.

I.

Lohnes was charged in a two-count indictment with aggravated sexual abuse, in violation of 18 U.S.C. §§ 2241(a) and 1153, and sexual abuse of a child, in violation of 18 U.S.C. §§ 2241(c) and 1153. Following his conviction by a jury,

Lohnes was sentenced by the district court[1] to the statutory minimum of 360 months' imprisonment.

On September 16, 2006, Lohnes and Neva Whiteshield visited a friend's home for the evening to drink alcohol and socialize. Around 8:30 p.m., Lohnes and Whiteshield left to pick up Whiteshield's daughters, C.L., age seven, and J.B., age five, at a local recreation center. They dropped the girls off at Whiteshield's home on the Spirit Lake Indian Reservation in Fort Totten, North Dakota, where Whiteshield told them to stay in her bedroom, watch television, and not to open the door for anyone. Whiteshield and Lohnes then returned to the friend's home to continue drinking. As the evening progressed, Lohnes's behavior began to frighten Whiteshield, so she decided to drive him to the home of Daryl Three Irons, where Lohnes was staying. Whiteshield asked Neil Greywater to accompany them.

Whiteshield and Greywater dropped Lohnes off at the Three Irons residence and drove away. A member of the Three Irons household testified that he saw Lohnes get out of Whiteshield's truck and walk into the woods behind the residence without first entering the home. Whiteshield and Greywater drove from place to place for approximately thirty minutes before returning to Whiteshield's home to get some beer. Greywater remained in the car while Whiteshield went to her front door. Despite unlocking the front door as usual, Whiteshield could not enter because the deadbolt was locked. After Whiteshield knocked on the door and bedroom window and kicked the door, her daughter C.L. opened the front door. C.L. was crying and said, "Mom, he made me do it. I didn't want to." Whiteshield was confused by C.L.'s demeanor and statement until she saw Lohnes coming out of the bedroom wearing only a shirt and no clothing from the waist down. Whiteshield began hitting Lohnes, who pushed her to the ground. Whiteshield called out for Greywater while she and Lohnes

---

[1]The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

continued to struggle until Lohnes jumped off her. When Greywater came to the front door, he saw Whiteshield holding her crying daughters and observed that Lohnes was naked from the waist down. Greywater struck Lohnes, who then ran off into the woods. Later that morning, Bureau of Indian Affairs police officers arrested Lohnes at the Three Irons residence. A criminal investigator recovered Lohnes's shorts, underwear, shoes, and wallet from Whiteshield's home.

On September 21, 2006, C.L. met with Karen Sevoir, a forensic interviewer with the Red River Children's Advocacy Center in Fargo, North Dakota. Using drawings and anatomically correct dolls, the two discussed the events of September 16. C.L. was not able to verbalize the act that occurred, but she wrote the words "suck dick" on the drawings. The interview was videotaped and presented to the jury at trial.

At trial, C.L. testified that Lohnes broke a bedroom window and entered her home. She stated that Lohnes removed his pants and hit her on the head. After being shown the drawings from her forensic interview, C.L. acknowledged the words she had written on the drawings and said, "that's what the bad man did." Later, when asked what happened, C.L. replied, "I didn't want to do that." She explained, "he hit me . . . he forced me to." C.L. testified for more than two hours, repeatedly stating that she did not want to tell what had happened that night. At no time did C.L. verbalize the act that took place.

J.B. testified that Lohnes entered their home through a bedroom window. She stated that Lohnes did not have his clothes on and that Lohnes "was trying to make [C.L.] suck." When asked what Lohnes "was trying to make [C.L.] suck," J.B. pointed to the penis on the anatomically correct male doll. Both C.L. and J.B. said that they were afraid to say what occurred that night.

II.

In support of his argument that there was insufficient evidence to support his convictions, Lohnes notes that C.L. was reluctant to discuss what occurred on September 16 and that she never verbalized the sexual act. He asserts that the evidence offered regarding the abuse lacked specificity. He also characterizes the forensic interview as leading and suggestive and criticizes the prosecution's extensive examination of C.L. and its use of leading questions.

"We review the sufficiency of the evidence supporting a conviction in the light most favorable to the Government and draw all reasonable inferences in favor of the jury's verdict." United States v. Hollow Horn, 523 F.3d 882, 890 (8th Cir. 2008) (citing United States v. Beck, 496 F.3d 876, 878 (8th Cir. 2007)) (internal quotations omitted). Reversal is only appropriate "if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt." Id.

The evidence presented to the jury was sufficient to support Lohnes's convictions on both counts. Count I charged Lohnes with aggravated sexual abuse, which requires that the defendant "knowingly cause[] another person to engage in a sexual act[2] by using force . . . ." 18 U.S.C. § 2241(a). Count II charged Lohnes with sexual abuse of a child, which requires that the defendant "knowingly engage[] in a sexual act with another person who has not attained the age of 12 years . . . ." 18 U.S.C. § 2241(c). The parties stipulated that the jurisdictional requirements of 18 U.S.C. § 1153(a) were met.

From the evidence presented, the jury could reasonably infer that Lohnes knowingly used force to engage in a sexual act with C.L., a child under the age of

---

[2]The definition of "sexual act" includes contact between the mouth and the penis. 18 U.S.C. § 2246(2)(B).

twelve. Although C.L. did not verbalize the sexual act before the jury, she did adopt the words written on the drawings presented to her and state that Lohnes made her perform the act described by those words. Her testimony is supported by J.B.'s testimony that Lohnes "was trying to make [C.L.] suck" and her identification of what it was that Lohnes was trying to make C.L. suck. C.L.'s and J.B.'s testimony is bolstered by the circumstantial evidence, including their expressed fear of Lohnes; the testimony that Lohnes was naked from the waist down when he was in the Whiteshield residence; and the fact that Lohnes's clothing and wallet were found in Whiteshield's home.

That C.L. was unable to verbalize the sexual act does not render her testimony insufficient. The victims in United States v. Johnson, 519 F.3d 816 (8th Cir. 2008), were also unable or unwilling to name body parts or sexual acts. Rather, they said things like, Johnson did "bad stuff to me" and circled words on a diagram. Despite the victims' inability to articulate the unlawful acts that occurred, we concluded that the evidence was sufficient to support Johnson's conviction for aggravated sexual abuse of a child. Additionally, we held that the use of leading questions was appropriate "to develop the testimony of sexually abused children, especially regarding precise physiological details of the sexual assaults." Id. at 822 (citing United States v. Grassrope, 342 F.3d 866, 869 (8th Cir. 2003)).

Further, C.L.'s reluctance to discuss the events of that night does not undermine her testimony. A young victim's "confusion and unresponsiveness should not be accorded great weight, [when they occur] in the unfamiliar and intimidating arena of the courtroom." United States v. St. John, 851 F.2d 1096,1099 (8th Cir. 1988). Unlike the victim in United States v. Kenyon, 481 F.3d 1054,1068 (8th Cir. 2007), C.L. did not say that she was unsure what happened or that she did not know what happened, only that she did not want to tell what happened. Even inconsistent testimony as to whether the abuse occurred may constitute sufficient evidence, see Johnson, 591 F.3d 816; St. John, 851 F.2d 1096, because it is for the jury to resolve

conflicting evidence and make credibility determinations, determinations that are "virtually unreviewable on appeal." <u>Johnson</u>, 519 F.3d at 822 (citing <u>United States v. Singh</u>, 494 F.3d 653, 660 (8th Cir. 2007)) (internal quotations omitted).

Similarly, Lohnes's arguments regarding the merits of his expert versus those of the government's expert are not persuasive, nor is his recitation of the facts concerning Whiteshield's initial attempts to cover up the fact that she had left her two young children at home without supervision. Lohnes had an opportunity to make these credibility arguments to the jury, and it was within the jury's province to reject them.

The judgment of conviction is affirmed.

_____