# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2263

_____

United States of America,

    Appellee,

  v.

Raymond Otter Robe,

    Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* District of South Dakota.
\*
\* [UNPUBLISHED]
\*

_____

Submitted: May 12, 2009
Filed: June 29, 2009

_____

Before LOKEN, Chief Judge, BYE, Circuit Judge, and MILLER, District Judge.[1]

_____

MILLER, District Judge.

Raymond Otter Robe was indicted on one count of assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. §§ 1153 and 113(a)(3), and one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6). It was stipulated that Otter Robe was an Indian and the location where the alleged incident occurred was in Indian Country. Otter Robe

_____

[1]The Honorable Brian Stacy Miller, United States District Judge for the Eastern District of Arkansas, sitting by designation.

was convicted by a jury on both counts. Although the district judge[2] denied Otter Robe's motion for acquittal as to Count I, he granted the motion as to Count II because "the evidence was insufficient as to the element of serious bodily injury." The district judge entered a judgment of conviction on Count II as to the lesser included offense of assault by striking, beating, or wounding, in violation of 18 U.S.C. §§ 1153 and 113(a)(4). Otter Robe was sentenced to 77 months' imprisonment on Count I, six months' imprisonment on Count II to run concurrently, three years of supervised release, and a special assessment in the amount of $110. On appeal, Otter Robe challenges the sufficiency of the evidence supporting his conviction on Count I. We affirm.

I.

On February 19, 2007, Otter Robe left the apartment of Allen Derockbrain's father, Joe Flying Horse, after arguing with and threatening Derockbrain with two knives, taken from Flying Horse's dish rack. Otter Robe went to Myron Oka's home. He went upstairs, spoke briefly with Lyle Oka, Myron's nephew, and used the telephone.

Myron testified that Otter Robe came back downstairs and began yelling at him, so he asked Otter Robe to leave. Otter Robe began swinging at him and hit him in the face a couple of times. Myron jumped backwards, but tripped and fell on his butt and back. Otter Robe fell, but got back up, and as they began fighting again, Myron tripped over a chair. As he was pushing himself up with his hands, Myron felt a hard blow to his head and blood came down. When he looked up, he saw Otter Robe with a knife in his hand. Otter Robe then ran from the house.

---

[2]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

Lyle testified that Otter Robe came upstairs where he was and took two knives out of a backpack and showed the two knives to him. Otter Robe then slid the knives up his sleeves. After Otter Robe had gone back downstairs, Lyle heard a commotion downstairs. He went downstairs and found Myron holding his head, which was bleeding.

Otter Robe denied having two knives or a backpack. He testified that the fight began when Myron swung a cast iron frying pan at him, hitting him in the finger. Otter Robe stated that he then held Myron down, but left when Myron called for Lyle to bring a gun. Myron testified that he did not have a frying pan or other weapon in his hand, and Lyle testified that Myron never asked him to get a gun and there was not a gun in the house.

Officer Doug Wilkinson arrived at Myron's house shortly after Otter Robe had left and he observed Myron bleeding. Wilkinson spoke with Myron and Lyle about the incident and then went to Flying Horse's apartment to talk to Otter Robe. When Wilkinson arrived at Flying Horse's home, Otter Robe ran out the door, and back to Myron's home. Otter Robe was detained by April Archambault, Myron's daughter, until Wilkinson arrived and arrested him. Wilkinson recovered two knives from Derockbrain, who testified that when Otter Robe came back to Flying Horse's apartment, he threw the knives into the window well outside of the apartment.

William Burkhard, a physician's assistant, testified that Myron's injury was more consistent with a knife than blunt force trauma. Teresa Olsen, a physician's assistant, testified that Otter Robe had an injury on his finger that was not likely caused by a frying pan.

II.

There is sufficient evidence supporting Otter Robe's conviction. "We review the sufficiency of the evidence supporting a conviction in the light most favorable to the Government and draw all reasonable inferences in favor of the jury's verdict." United States v. Lohnes, 554 F.3d 1166, 1168 (8th Cir. 2009) (quoting United States v. Hollow Horn, 523 F.3d 882, 890 (8th Cir. 2008). "Reversal is only appropriate 'if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt.'" Id. at 1168-69. In reviewing the sufficiency of the evidence, "we must not weigh the evidence or assess the credibility of the witnesses." United States v. Raplinger, 555 F.3d 687, 693 (8th Cir. 2009). "Although a federal defendant bears the burden of production on the issue of self-defense, once that burden is met, the government must prove beyond a reasonable doubt that the defendant did not act in self-defense." United States v. Milk, 447 F.3d 593, 598 (8th Cir. 2006).

Otter Robe asserts that there was insufficient evidence supporting his conviction on Count I. He also asserts that there was insufficient evidences rebutting his argument that he was acting in self-defense. In support of his arguments, Otter Robe points out that there is evidence in the record contradicting Lyle's testimony that Otter Robe was carrying a backpack. He also points to his own testimony that Myron attacked him first and that self-defense was therefore justified. He also notes that the evidence indicates that Myron's injuries could have been caused by blunt force trauma, and that there were no fingerprints and no identified blood on the knives. He argues that the forensic evidence does not connect the knives to any particular individual, and that if he fought with Myron Oka with knives up his sleeves, he would have been injured by the knives.

Here, the jury clearly credited the testimony of Myron, Lyle, Wilkinson, Derockbrain, Olson, and Burkhard over that of Otter Robe. When all reasonable inferences are drawn in favor of the jury's verdict, there is no question that a

reasonable jury could find Otter Robe guilty of Count I beyond a reasonable doubt. Therefore, the evidence was sufficient to support Otter Robe's conviction as to Count I, including a finding that Otter Robe was not acting in self-defense.

The judgment of conviction is affirmed.

_____