# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-2786

_____

United States of America

*Plaintiff - Appellee*

v.

Donald Clark Luger, also known as Jody Luger

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: May 18, 2016
Filed: September 14, 2016

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Jody Luger appeals from his conviction of one count of aggravated sexual abuse of a child in Indian country. We have considered each of the three issues presented on appeal, and affirm the judgment of the district court.[1]

_____

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

## I. Background

The investigation in this case began in late 2011, when a letter alleging that Luger sexually assaulted his girlfriend's 16-year-old daughter was sent to the U.S. Attorney's Office (USAO) for the District of North Dakota. The letter was forwarded to the FBI for further investigation, which ultimately revealed multiple allegations of sexual abuse going back decades. On May 14, 2013, Luger was indicted on three counts. Count 1 charged him with aggravated sexual abuse of a child, T.L., in Indian country, occurring in 1999.[2] Counts 2 and 3 charged Luger with abusive sexual contact and child abuse in Indian country, occurring in late 2011. The victim of the latter two counts was E.C.G., the 16-year-old girl who had been the subject of the original letter.

Before trial, the government indicated its intent to introduce propensity evidence pursuant to Federal Rules of Evidence 413 and 414. This evidence was to consist of the testimony of five women, all of whom alleged that Luger had sexually abused or assaulted them. The assaults had all occurred more than 25 years prior to the indictment in this case. Three of the women had been adults at the time of the assaults, and the other two had been young teenagers. Luger moved in limine to exclude all five women's testimony. The district court granted Luger's motion as to the three women who had been adults at the time of the assaults, and denied Luger's motion as to the two women—M.N. and S.C.—who had been teenagers at the time of the assaults.

The case proceeded to trial on November 17, 2014. At trial, T.L. testified that Luger had sexually assaulted her in 1997, when she was 13 years old. At the time, T.L.'s mother was in a relationship with Luger. T.L. testified that early one morning after her mother had left their apartment and gone to work, Luger came into her

---

[2]The evidence later showed that this assault may have occurred in 1997.

bedroom, held her down, and touched her breasts and genitals. T.L. said that Luger smelled as though he had been drinking. E.C.G. also testified, but recanted her allegation[3] that Luger had assaulted her. Instead, E.C.G. testified that during her first interview with the FBI, when she said that Luger had sexually abused her (corroborating the accusation in the letter sent to the USAO), she had been using methamphetamine and was hungover. E.C.G. testified that she later heard about what she had told the FBI, but did not remember telling them that and did not believe that Luger would have abused her. E.C.G. also testified about various traumatic events and disruptions in her life, which Luger and the government respectively framed as damaging and bolstering to the credibility of her original accusation. M.N.'s and S.C.'s testimony about Luger's assaults on them was presented as propensity evidence. On November 21, at the close of the defense's case and before closing arguments, the district court granted Luger's motion for a judgment of acquittal as to Counts 2 and 3. The court determined that, in light of E.C.G.'s recantation, the government had not presented evidence from which a reasonable jury could find Luger guilty beyond a reasonable doubt. Count 1 went to the jury, which returned a verdict of guilty.

After trial and upon review of the presentence report, Luger's counsel discovered that the U.S. Attorney, Timothy Purdon, had a clear conflict of interest in Luger's case. Prior to his appointment as the U.S. Attorney for the District of North Dakota, Purdon had worked in private practice as a criminal defense attorney and had represented Luger on a charge of tampering with evidence in 2009. Based on this fact, Luger moved to disqualify the USAO for the District of North Dakota on February 17, 2015. The government filed a response on February 19, and attached an affidavit by Purdon. The district court then set a hearing for March 27, 2015.

---

[3]E.C.G. initially told the FBI that Luger sexually assaulted her one night when he came home from a bar and found her alone in the living room. She said that she was lying down watching TV, and Luger came over and touched her genitals. At the time, Luger was in a relationship with E.C.G.'s mother.

Before the hearing, the government was permitted to withdraw Purdon's affidavit and file an exhibit consisting of an email exchange between the USAO and officials at the Department of Justice (DOJ) regarding the conflict. At the hearing, the government presented no additional evidence. The district court granted the motion to disqualify.

On April 15, 2015, the government filed a motion for reconsideration on the disqualification issue, attaching four exhibits ostensibly showing that the USAO had properly screened Purdon from participation in Luger's case. The government did not explain its initial failure to provide this evidence. Nevertheless, the district court granted the government's motion for reconsideration, vacated its previous order, and denied Luger's motion to disqualify. On July 16, 2015, Luger filed a motion for a new trial, arguing that the undisclosed conflict of interest and associated appearance of impropriety had deprived him of his constitutional right to a fair trial. The district court denied Luger's motion, finding that any newly discovered evidence would not have resulted in an acquittal.

On July 30, 2015, the district court sentenced Luger to 138 months' imprisonment. Luger timely appealed, arguing that the district court erred in partially denying his motion in limine, in granting the government's motion for reconsideration, and in denying his motion for a new trial. We address each issue in turn.

## II. Motion in Limine

Luger first challenges the district court's partial denial of his motion in limine as to the propensity testimony of M.N. and S.C. He asserts that the sexual assaults about which the two women testified were insufficiently similar to the charged conduct in this case to justify their admission as propensity evidence, and that because of the dissimilarity the prejudicial effect of the testimony substantially outweighed its probative value. We review the district court's decision to admit this

evidence for abuse of discretion. United States v. Gabe, 237 F.3d 954, 959 (8th Cir. 2001); United States v. Mound, 149 F.3d 799, 800–01 (8th Cir. 1998) (holding that Rules 413 and 414 are constitutional subject to the limitations of Rule 403, and reviewing the district court's evidentiary decisions under these rules for abuse of discretion).

As a general rule, evidence of a defendant's prior bad acts is not admissible to prove his propensity to commit the charged crime. See Fed. R. Evid. 404(b). However, Federal Rules of Evidence 413 and 414 create an exception to that general rule in cases where the charged crime is sexual assault or child molestation. Fed. R. Evid. 413, 414. In such cases, evidence of any prior sexual assault or child molestation offense is admissible for any relevant purpose, including to prove the defendant's propensity to commit the charged offense. Id. These rules are checked by Rule 403, under which otherwise admissible propensity evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403. Though Rules 413 and 414 reflect a "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible," United States v. LeCompte, 131 F.3d 767, 769 (8th Cir. 1997), the prior offenses must be similar enough to the charged offense to be probative of the defendant's propensity to commit that specific offense. See United States v. Crow Eagle, 705 F.3d 325, 327 (8th Cir. 2013) (per curiam); United States v. Gabe, 237 F.3d 954, 959 (8th Cir. 2001). Thus, even where prior offenses are offered solely to prove the defendant's propensity to commit the charged offense, the district court is required to conduct a careful analysis of the prior offenses to determine that they are in fact probative of propensity and are not overly prejudicial.

Here, the district court conducted a commendably thorough analysis of the admissibility of the propensity testimony. The court reviewed the history and purpose of Rules 413 and 414, observing that they deviate from the general rule that evidence may not be admitted to prove propensity. The district court also noted that after the

enactment of Rules 413 and 414, courts continued to apply the balancing test required by Rule 403 and excluded evidence otherwise admissible under the rules if it created "substantially unfair prejudice" relative to its probative value. In this case, the district court readily concluded that the three sexual assaults against adult victims "ha[d] little relevance on the question of propensity to engage in inappropriate sexual contact with a minor," and that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. However, the court found that M.N.'s and S.C.'s testimony about Luger's assaults on them was probative of his propensity to commit the charged offenses, because there was "greater similarity" between the charged conduct and the propensity conduct. The court observed that while there was some prejudice to Luger, that prejudice was not substantial enough to justify excluding the evidence.

Though we consider this a close question, the district court acted within its discretion in admitting M.N.'s and S.C.'s testimony. The assaults against M.N. and S.C. had occurred more than 25 years prior to the trial in this case, diminishing the probative value of their testimony and potentially increasing its prejudicial effect. See Gabe, 237 F.3d at 960. Furthermore, both M.N. and S.C. testified that Luger raped them, a more serious—and thus more prejudicial—offense than the touchings charged in this case. However, the assaults against T.L., E.C.G.,[4] M.N., and S.C. all occurred when the victims were between 13 and 16 years old. Luger was in a relative position of power or authority over his victims: T.L., E.C.G., and M.N. were all part

_____

[4]We note that Luger was ultimately acquitted of the charges relating to E.C.G., and we have some concerns about the prejudicial nature of her testimony in this context. However, at the time that the district court ruled on the motion in limine, the counts as to E.C.G. were still extant, and the district court was not required to predict that it would enter a judgment of acquittal on those counts when analyzing the admissibility of M.N. and S.C.'s testimony under Rules 413 and 414. We also note that Luger did not object to the admission of E.C.G.'s testimony at trial, and that after the judgment of acquittal the district court determined that her testimony could not be considered as propensity evidence.

of Luger's extended family group, and Luger was S.C.'s teacher. T.L. and M.N. were both assaulted while sleeping in a home to which Luger had access. Luger restrained T.L., M.N., and S.C. while he assaulted them, either by holding them down or, in S.C.'s case, tying her to his bed.

Given these similarities, M.N.'s and S.C.'s testimony was probative of Luger's propensity to commit the charged offenses in this case. While their testimony was prejudicial, the district court concluded that this prejudice was not substantially unfair and did not outweigh the testimony's probative value. Crow Eagle, 705 F.3d at 328 ("The district court's balance of the prejudicial and probative impacts of evidence is accorded 'great deference.'" (citation omitted)); United States v. Hollow Horn, 523 F.3d 882, 888 (8th Cir. 2008). Rules 413 and 414 contemplate the admission of prejudicial evidence to prove propensity, and we believe the district court applied those rules correctly here. See LeCompte, 131 F.3d at 769 ("Rule 403 must be applied to allow Rule 414 its intended effect."). We defer to the district court's careful exercise of its discretion in this case, and conclude that the propensity testimony of M.N. and S.C. was properly admitted.

III. Motion for Reconsideration

Luger next argues that the district court abused its discretion in granting the government's motion for reconsideration.[5] See Julianello v. K-V Pharm. Co., 791 F.3d 915, 922 (8th Cir. 2015) (reviewing the district court's denial of a motion for reconsideration for abuse of discretion).

In the civil context, our court has been clear that a motion for reconsideration "serve[s] the limited function of correcting manifest errors of law or fact or . . .

---

[5]Luger does not challenge the district court's ultimate denial of his motion to disqualify the North Dakota USAO.

present[ing] newly discovered evidence." Bradley Timberland Res. v. Bradley Lumber Co., 712 F.3d 401, 407 (8th Cir. 2013) (alterations in original) (quoting United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006)). A motion for reconsideration should not be used as a vehicle to present evidence that was available when the matter was initially adjudicated. See Julianello, 791 F.3d at 922; Anthony v. Runyon, 76 F.3d 210, 215 (8th Cir. 1996) (evidence presented on a motion for reconsideration "must be truly new, in the sense that it was previously unavailable"); Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988) (quoting Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987) (motion for reconsideration "cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the [previous] motion"). Although this court has never had occasion to do so, courts in other Circuits have held that this civil standard applies to motions for reconsideration raised in criminal cases outside of the suppression context. See United States v. Rollins, 607 F.3d 500, 502 (7th Cir. 2010) (citing United States v. Healy, 376 U.S. 75 (1964)) ("The Justices have concluded that motions to reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits.")); see, e.g., United States v. Gomez-Gomez, 643 F.3d 463, 471–72 (6th Cir. 2011) (reconsideration was improper where the movant "failed to inform the district court why his additional witness testimony in support of his claim that he was a juvenile was not previously available to him").

In this case, in response to Luger's motion to disqualify, the government initially submitted an affidavit by Purdon as evidence that disqualification was unnecessary. Before the hearing on the issue, the government asked to withdraw that affidavit, and instead provided an email exchange between the USAO and the DOJ regarding Purdon's recusal from Luger's case. The government provided no additional evidence at the hearing on this motion. After the district court resolved the matter against the government and in Luger's favor, the government sought reconsideration and provided four exhibits—including Purdon's affidavit—in support

of its position that Purdon had been properly screened from Luger's case. The government offered no reason for its failure to provide that evidence before the motion was adjudicated, and does not dispute that all the evidence was available before the hearing on the motion to disqualify. According to Luger, the government used its motion for reconsideration for the sole purpose of introducing evidence that could have been raised during the initial motion to disqualify but was offered only after the government received an adverse ruling. Thus, Luger asks us to import the civil standard for motions for reconsideration—including the bar on using such motions to "rais[e] evidence [the movant] could have previously raised"—into the criminal context and find that the district court improperly granted reconsideration without requiring the government to justify its failure to present available evidence to the district court during the pendency of the original motion. See Julianello, 791 F.3d at 923 (motions to reconsider should not be used for the "impermissible purpose of raising evidence they could have previously raised").

We need not decide whether to import the civil motion for reconsideration standard into the criminal context, however, because any possible error in granting the motion to reconsider was harmless. Luger moved to disqualify the USAO after trial, when only sentencing remained to be completed. Reversal of the district court's grant of the motion for reconsideration and reinstatement of the court's order disqualifying the USAO would therefore require only resentencing, without the involvement of the North Dakota USAO. Luger suffered no prejudice from the North Dakota USAO's participation in sentencing—in fact, Luger received a below-Guidelines sentence[6]—and he does not request resentencing. As a result, we decline to remand on this issue. See United States v. Hasting, 461 U.S. 499, 509 (1983).

---

[6]Luger was sentenced to 138 months' imprisonment, and the advisory Guidelines sentencing range was 168–210 months' imprisonment.

-9-

## IV. Motion for New Trial

Third and finally, Luger argues that the district court erroneously denied his motion for a new trial based on newly discovered evidence. We review the district court's denial of a new trial for abuse of discretion, and conclude that there was no such abuse here. United States v. Dodd, 391 F.3d 930, 934 (8th Cir. 2004).

In support of his motion for a new trial, Luger introduced into evidence the four exhibits the government had introduced in support of its motion for reconsideration,[7] as well as several filings that included Purdon's name in the signature block. The district court considered this evidence, and determined that the USAO had followed appropriate recusal procedures, that Purdon had been adequately screened from Luger's case, and that Purdon had no improper substantive involvement with the case. The court therefore concluded that there was no conflict of interest tainting Luger's trial, and that the newly discovered evidence[8] of Purdon's conflict of interest would have no effect on a new trial.

Given the finding that Purdon had been adequately screened from Luger's prosecution and trial, the district court's decision to deny Luger a new trial was not an abuse of discretion. In support of his argument that a new trial was necessary because Purdon's conflict of interest rendered his trial actually or apparently unfair, Luger points to two facts: first, that several filings included Purdon's name in the

---

[7]Even if the district court's consideration of these exhibits in the context of the government's motion for reconsideration was improper, Luger himself reintroduced them in support of his motion for a new trial.

[8]The district court also found that the evidence of Purdon's conflict was not newly discovered, because it was "indisputable" that Luger knew that Purdon had previously represented him. We are less inclined to so conclude, but because we affirm the district court's ruling on its alternative grounds we need not resolve this question.

signature block,[9] and second, that Purdon asked the Assistant U.S. Attorney responsible for Luger's case not to file his affidavit regarding recusal unless it was necessary. Both of these facts were available to the district court at the time of Luger's motion, and both seem to indicate that Purdon was in some way involved in Luger's prosecution and that there were troubling cracks in the screening measures undertaken to "wall off" Purdon from this case. But neither fact renders clearly erroneous the district court's ultimate finding that Purdon was adequately screened from Luger's case. Luger does not allege any specific unfairness associated with these instances of Purdon's purported involvement in his case, instead asserting that the appearance of Purdon's name in the signature block on filings and Purdon's stance on the use of his affidavit affected the "core" of his trial. On the record before us, we do not see how. There is no evidence that the appearance of Purdon's name in the filings was actually prejudicial, and the district court determined that Purdon's request regarding his affidavit was not substantive in nature. And Luger does not allege any specific unfairness associated with Purdon's conflict of interest generally. For example, he did not assert that Purdon's previous representation affected his decision on whether to testify, he did not identify any evidence or examination at trial that revealed Purdon's involvement in his case, and he did not explain the nature of any overlap between this case and the case where Purdon was his attorney. In the face of the district court's determination that Purdon was actually recused from Luger's case, Luger's broad claim of unfairness is insufficient to support a conclusion that he should have received a new trial.

We agree with Luger that a defendant is entitled to a trial that both appears fair and actually is fair. United States v. Singer, 710 F.2d 431, 437 (8th Cir. 1983) (en banc). We also agree that the involvement of a conflicted prosecutor in a criminal proceeding is a fundamental constitutional error. Young v. United States ex rel.

---

[9]One of these filings was a stipulation the parties entered, which was read to the jury, Purdon's name included.

Vuitton et Fils S.A., 481 U.S. 787, 810 (1987). But here, the district court established that Purdon—admittedly conflicted—did not participate in Luger's prosecution or trial. Because Purdon was adequately screened from Luger's case, the fairness concerns associated with the involvement of a conflicted prosecutor did not actually arise.

Our conclusion that a new trial was not required in this case does not diminish the importance of careful, conscientious management of conflicts of interest. A conflict such as this one has the potential to affect both the fairness and the appearance of fairness in a criminal prosecution. Full disclosure to all affected parties—and to the district court—is also important in achieving these goals. But based on the district court's specific finding that Purdon had been adequately screened from substantive involvement in Luger's prosecution, and under the particular circumstances of this case, we conclude that Luger has not shown that the district court abused its discretion in denying him a new trial.

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

COLLOTON, Circuit Judge, concurring in the judgment.

I agree with the decision to affirm, and I concur in the judgment.

The district court did not abuse its discretion in admitting the testimony of witnesses M.N. and S.C. under Federal Rules of Evidence 413 and 414. I do not join the court's expression of "concerns" about the "prejudicial nature" of the trial testimony of witness E.C.G, *ante*, at 6 n.4, because Luger does not raise any claim of error concerning this testimony, and the district court properly admitted the testimony of E.C.G. as an alleged victim in the case.

-12-

On the motion for reconsideration concerning disqualification, I agree that Luger suffered no prejudice from having an attorney from the United States Attorney's Office in North Dakota rather than another government attorney represent the United States at sentencing. That is enough to resolve this point of the appeal. The court, *ante*, at 7-8, goes further in *dicta* to suggest that a district court considering a motion for reconsideration in a *civil case* may not receive evidence that was available earlier. The cited authorities, however, all involve orders *denying* a motion for reconsideration; the court cites no case in which this court held that a district court is categorically forbidden to receive additional evidence on reconsideration without demanding a justification from the movant. The court, *ante*, at 8, also opines that the Sixth and Seventh Circuits apply the asserted "civil standard" to motions for reconsideration in criminal cases. Again, however, the cited authorities involve orders *denying* a motion for reconsideration. When directly confronted with the propriety of *granting* a motion in a criminal case, the Seventh Circuit rejected the rule suggested by the court: "We . . . decline to impose a justification requirement to reopen a suppression hearing. *Instead, we hold that this decision lies within the sound discretion of the district court.*" *United States v. Ozuna*, 561 F.3d 728, 734-35 (7th Cir. 2009) (emphasis added).[10]   Given that Luger was not prejudiced by the

_____

[10]The weight of authority concerning motions to reconsider suppression orders in criminal cases aligns with the Seventh Circuit. *Compare United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015) ("The district court may prefer, even require, the government to explain why it failed to introduce an argument earlier, *but that decision should rest with the district court.*") (emphasis added), *Ozuna*, 561 F.3d at 734-35, *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 177, 196-97 (2d Cir. 2008) ("While it may often be useful for the government to explain its reasons for not introducing evidence earlier, *a district court may consider the evidence without first finding good cause for the government's omission or delay.*") (emphasis added), *United States v. Raab*, 752 F.2d 1320, 1323 (9th Cir. 1984) ("We reject [a] 'justification' requirement . . . ."), *and United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975), *with McRae v. United States*, 420 F.2d 1283, 1288-89 (D.C. Cir. 1969).

district court's approach, it is unnecessary here to address whether a district court in any context must demand a justification for the presentation of new evidence on reconsideration.

I agree that the district court did not abuse its discretion in denying Luger's motion for a new trial, because United States Attorney Purdon was adequately screened from involvement in Luger's case. Unlike the court, *ante*, at 10 n.8, I express no view on the district court's alternate conclusion that evidence of Purdon's conflict of interest was not newly discovered.

_____