# United States Court of Appeals
### For the Eighth Circuit
_____

No. 23-3775
_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Red Elk

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Western
_____

Submitted: October 23, 2024
Filed: March 31, 2025
_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.
_____

KELLY, Circuit Judge.

A jury convicted Anthony Red Elk on one count of aggravated sexual abuse of a minor and two counts of sexual abuse, in violation of 18 U.S.C. §§ 1153, 2241(c), 2242(2), and 2246(2)(A). Red Elk appeals, arguing the district court[1]

---

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota, now retired, presided over trial; the Honorable Karen E. Schreier,

abused its discretion in admitting evidence of a prior sexual assault and erred in applying two sentencing enhancements. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

In July 2023, Red Elk was tried on three counts of sexual abuse spanning about a decade and all involving his niece, C.T.B. The charges stemmed from C.T.B.'s allegations that Red Elk raped her once when she was under the age of twelve and again on two occasions, years later, when she was about nineteen and twenty.

As to Count 1, C.T.B. testified that when she was a young girl growing up on the Pine Ridge Reservation in South Dakota, Red Elk began dating her aunt, V.P.E.[2] Red Elk and V.P.E. had three children whom C.T.B. would babysit. One day when she was about ten years old,[3] C.T.B. was babysitting for one of the children at the trailer where V.P.E. and Red Elk lived, when Red Elk arrived unannounced. Red Elk, who was inebriated, staggered up the trailer's front steps, walked inside, and "pushed himself against" her. He then "pulled up [her] shirt," caressed her, touched her breasts, and pulled down her shorts. He removed his own shorts and put his penis in her vagina; C.T.B. testified that he had his hands on her, that it "hurt," and that she felt sore. C.T.B. testified that Red Elk told her no one would believe her if she reported what happened. C.T.B. also testified that on subsequent occasions, Red Elk "always found a way" to make faces at her, mock her, and try to rub and kiss her.

---

United States District Judge for the District of South Dakota, presided over sentencing.

[2]At some point, Red Elk became C.T.B.'s uncle through common law marriage.

[3]The offense underlying Count 1 occurred sometime between 2008 and 2010.

C.T.B. testified that V.P.E. and Red Elk moved away for some time, but eventually returned to the community. Once they were back, C.T.B. made efforts to avoid Red Elk but was not always successful. She turned to drinking and smoking "[t]o block out what happened," and to "numb the pain." She continued to spend time at V.P.E. and Red Elk's home, but "only for [her] nephews."

As to Count 2, C.T.B. testified that in 2018, around the age of nineteen, she was doing laundry at V.P.E. and Red Elk's home when Red Elk pushed her onto the couch, held her down, and pulled down her pants. C.T.B. testified that she was worried he would hurt her and was unable to get him off her, so she did not fight back. He vaginally raped her in a "[r]ough" manner. At some point, he stopped and left. Afterward, C.T.B. was sore, her stomach hurt, and there were small blood spots on her underwear.

As to Count 3, C.T.B. testified that one night in January 2019 when she was about twenty years old, after she, Red Elk, and V.P.E. had been drinking in V.P.E. and Red Elk's garage, C.T.B. "passed out." She woke up some hours later, in the early morning, to find that her pants were off, Red Elk was on top of her, and his penis was inside her. V.P.E. was no longer in the room. C.T.B. was still drunk and unable to get him off her. C.T.B. testified that, afterwards, her stomach hurt, she had pain in her thighs, and she was sore.

In addition to C.T.B.'s testimony, the jury also learned that Red Elk admitted to an FBI agent that he had had sex with C.T.B. on one occasion when she was an adult, but he claimed that it had been consensual.

The government also elicited testimony pursuant to Rule 413 of the Federal Rules of Evidence.[4] A woman named K.W. testified that in 2007, while she was a

[4]The government gave pretrial notice under Rule 413 of its intent to introduce evidence that Red Elk had sexually abused or assaulted three female teenagers, K.W., L.W., and N.B., and one male minor, H.R.O. H.R.O.'s allegations formed the basis

sixteen-year-old high school senior, Red Elk attempted to sexually assault her. At the time, she knew Red Elk, who was about two years older. K.W. testified that one day, after playing basketball with her sister and cousins at the high school's open gym, K.W. encountered Red Elk while she and her family were walking home. Red Elk and K.W. began talking, and K.W.'s family kept walking ahead, eventually getting a fair distance away from them. When K.W. told Red Elk she wanted to catch up with her family, Red Elk told her to turn onto a different path, which he suggested would be faster. Once out of anyone's sight, Red Elk put his hands on her waist, pushed her hips hard enough that her legs buckled beneath her and she fell to the ground, and forced himself between her legs. Red Elk tried to remove her jeans, and when K.W. punched and swung at him, he told her to "stop fighting" and that she "want[ed] it." K.W. testified that she thought Red Elk tried to remove his own pants as well. She got loose, kicked him between his legs, and ran away. Red Elk chased her, but she was able to catch up with her family, and he stopped his pursuit. K.W. testified that after the incident, in her final days before graduating high school, Red Elk made other unwanted advances, including "rub[bing] his parts against [her]" and saying "sexual things" to her.

The jury found Red Elk guilty on all three counts. As relevant on appeal, the district court applied a four-level sentencing enhancement to Counts 2 and 3 for use of force. See USSG § 2A3.1(b)(1). After applying the multiple count adjustment, see USSG Ch. 3, Pt. D, the court calculated a combined adjusted offense level of 41. Relying on C.T.B.'s and K.W.'s testimony, it then applied a five-level enhancement for repeat and dangerous sex offenses against minors. See USSG § 4B1.5(b)(1). This resulted in a total offense level of 46, reduced to the Sentencing Guidelines' maximum offense level of 43, which carries an advisory range of life in prison. See USSG Ch. 5, Pt. A, comment. (n.2) ("An offense level of more than 43 is to be treated as an offense level of 43."). The court sentenced Red Elk to life imprisonment

of Counts 4 and 5 of the superseding indictment, but those counts were severed for purposes of trial. After Red Elk was convicted on Counts 1, 2, and 3, the government dismissed Counts 4 and 5. Red Elk sought to exclude all of the proposed Rule 413 evidence, and the district court ultimately excluded all but K.W.'s testimony.

-4-

on each count, to run concurrently. Red Elk appeals both his conviction and his sentence.

## II.

We assess the district court's decisions on the admissibility of evidence for abuse of discretion. United States v. Ramirez-Martinez, 6 F.4th 859, 866 (8th Cir. 2021). We review the district court's application of the Sentencing Guidelines *de novo* and its factual findings at sentencing for clear error. United States v. Peterson, 507 F.3d 1115, 1118 (8th Cir. 2007). "Clear error exists 'only when we are left with the definite and firm conviction that a mistake has been committed.'" Vines v. Welspun Pipes Inc., 9 F.4th 849, 854 (8th Cir. 2021) (quoting United States v. Williams, 605 F.3d 556, 570 (8th Cir. 2010)).

## A.

Red Elk first argues that the district court abused its discretion in admitting K.W.'s testimony under Federal Rules of Evidence 413 and 403. "[I]n sexual assault and child molestation cases, evidence that the defendant committed a prior similar offense may be considered for its bearing on any matter to which it is relevant, including the defendant's propensity to commit such offenses." United States v. Sanchez, 42 F.4th 970, 975 (8th Cir. 2022) (alteration in original) (quoting United States v. Gabe, 237 F.3d 954, 959 (8th Cir. 2001)); Fed. R. Evid. 413(a), 414(a).[5] We have held that "[a] prior sexual assault is relevant when 'committed in a manner similar to the charged offense.'" Sanchez, 42 F.4th at 975 (quoting United States v. Crow Eagle, 705 F.3d 325, 326 (8th Cir. 2013)). Evidence that is relevant under Rule 413 is also subject to Rule 403 balancing, under which the court must exclude evidence whose probative value is substantially outweighed by certain other factors,

---

[5]Rule 413 applies to evidence of "any other sexual assault," while Rule 414 applies to evidence of "any other child molestation." Fed. R. Evid. 413(a), 414(a). We have held that the two rules are otherwise "substantially similar." United States v. Hollow Horn, 523 F.3d 882, 887 n.6 (8th Cir. 2008).

including the danger of unfair prejudice. United States v. LeCompte, 131 F.3d 767, 769 (8th Cir. 1997); Fed. R. Evid. 403.

Red Elk argues that K.W.'s testimony was so dissimilar to the charged offense conduct involving C.T.B. that it was irrelevant under Rule 413 or unduly prejudicial under Rule 403. Red Elk stresses that C.T.B. was his niece, while K.W. was merely an acquaintance; C.T.B. was significantly younger than Red Elk, while K.W. was closer to his age at the time of the alleged assault; Red Elk was purportedly intoxicated during the offenses against C.T.B., while K.W. made no such claim; and the offense conduct against C.T.B. occurred in Red Elk's home, while K.W.'s alleged assault occurred outside, in public.

Evidence of K.W.'s alleged assault was not an exact match to the charged conduct, but we cannot say the district court abused its discretion in finding K.W.'s testimony admissible. Rule 413 testimony does not need to be identical to the indictment's allegations to be relevant and potentially admissible. United States v. Never Misses A Shot, 781 F.3d 1017, 1028 (8th Cir. 2015). And our cases have discerned no abuse of discretion in courts' admission of testimony under Rules 413 and 414 where the offenses were remote in time, see Gabe, 237 F.3d at 960 (upholding admission of Rule 414 evidence from twenty years prior to offense conduct); targeted those of different ages, see United States v. Hollow Horn, 523 F.3d 882, 885, 889 (8th Cir. 2008) (upholding admission of Rule 413 evidence that defendant, accused of touching two young girls' vaginas, had raped one of those girls' mothers when she was twenty years old); and involved both family members and non-family members, see Sanchez, 42 F.4th at 973–75 (upholding admission under Rules 413 and 414 of decades-old evidence that defendant had touched three young girls' vaginas—the defendant's daughter, his then-girlfriend's daughter, and one who did not appear to be related to him).

Rather, the district court was within its discretion to credit similarities between C.T.B.'s and K.W.'s allegations over any differences between them for purposes of determining admissibility. All of the incidents involved rapes or

attempted sexual assaults of people Red Elk knew, even if they were not both members of his family. Cf. United States v. Ahmed, 119 F.4th 564, 569 (8th Cir. 2024) (finding no abuse of discretion in admission of testimony under Rule 413, and noting that despite dissimilarities, "there are still similarities between [the defendant's prior] assault and the charged ones that make it probative, including that [he] sexually assaulted women older than he was whom he didn't know"). All incidents involved Red Elk using physical force. At least some of the alleged conduct was close in time: the first count charged that Red Elk had raped C.T.B. between October 2008 and October 2010, while K.W. alleged that Red Elk assaulted her in 2007. And both C.T.B. and K.W. alleged that Red Elk continued to make unwanted advances after the assaults, rubbing up against them and making sexual remarks.

Though K.W.'s testimony "was undoubtedly prejudicial . . . Rule 403 . . . is concerned only with '*unfair* prejudice, that is, an undue tendency to suggest decision on an improper basis.'" Hollow Horn, 523 F.3d at 889 (emphasis added) (quoting Gabe, 237 F.3d at 960). Under Rule 413, a proper basis for her testimony was to show Red Elk's propensity to commit sexual assault; accordingly, the admission of K.W.'s testimony for that purpose "is not, in itself, unfair" within the meaning of Rule 403. Sanchez, 42 F.4th at 976 (quoting United States v. Splettstoeszer, 956 F.3d 545, 548 (8th Cir. 2020)); see also Ahmed, 119 F.4th at 569 ("[W]e discern no unfair prejudice here given that [the defendant's] propensity to commit sexual assaults is not an improper matter for the jury to consider. That's the whole point of Rule 413." (citation omitted)). Moreover, the possibility of unfair prejudice is reduced here because the district court gave limiting instructions.[6] See Sanchez, 42 F.4th at 976

---

[6]The jury was instructed as follows:

> You have heard evidence Mr. Red Elk may have committed another act of sexual assault. The defendant is not charged with this other conduct. . . . If you find that the other conduct has been proved, you may consider that conduct to help you decide any matter to which it is relevant. You should give the other conduct the weight and value you believe it is entitled to receive.

(citing United States v. Weber, 987 F.3d 789, 793–94 (8th Cir. 2021)). The differences between C.T.B.'s and K.W.'s testimony lessened the evidence's probative value, but we see nothing to indicate that the district court "commit[ted] a clear error of judgment" in finding that the testimony was sufficiently similar such that its relevance was not substantially outweighed by the danger of unfair prejudice.[7] See United States v. Bass, 478 F.3d 948, 951 (8th Cir. 2007) (quoting United States v. Dodd, 391 F.3d 930, 934 (8th Cir. 2004)). Under this deferential standard of review, we see no abuse of discretion.

## B.

Next, Red Elk argues that the district court erred in applying the Repeat and Dangerous Sex Offender Against Minors enhancement under USSG § 4B1.5(b)(1).[8] He contends that the court should not have credited K.W.'s testimony and that even if it was proper to do so, her testimony did not describe "prohibited sexual conduct."

---

> Remember, the defendant is on trial only for the crimes charged. You may not convict a person simply because you believe he may have committed another act not charged in the indictment.

[7]Another court might have come to a different conclusion regarding the admissibility of this testimony, but such is the nature of a district court's discretion.

[8]The government argues that Red Elk failed to preserve his appeal of the pattern enhancement's application. But Red Elk objected to the paragraphs of the presentence report describing K.W.'s testimony, arguing they were unreliable and should not be used in sentencing. And at the sentencing hearing, the district court claimed that for purposes of the pattern enhancement, it would "need to address the objections that the defendant has to [those] paragraphs." This is enough to preserve the objection. See United States v. Soto, 62 F.4th 430, 432–33 (8th Cir. 2023) ("Preserving an issue [for appeal] is a matter of making a timely objection to the trial court and clearly stating the grounds for the objection, so that the trial court has an opportunity to prevent or correct the error in the first instance." (quoting United States v. Williams, 994 F.2d 1287, 1294 (8th Cir. 1993))).

The Guidelines provide a five-level enhancement for a defendant convicted of a "covered sex crime" who also "engaged in a pattern of activity involving prohibited sexual conduct." See USSG § 4B1.5(b)(1) (noting these and other requirements not relevant here). For the enhancement to apply, the district court must find that "'on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor,' without regard to whether the conduct occurred 'during the course of the instant offense' or 'resulted in a conviction.'" United States v. Dowty, 37 F.4th 489, 494–95 (8th Cir. 2022) (quoting USSG § 4B1.5, comment. (n.4(B))). The court need only find such conduct proven "by a preponderance of the evidence." Id. at 495 (quoting United States v. Scott, 448 F.3d 1040, 1043–44 (8th Cir. 2006)).

Red Elk does not dispute that his conviction on Count 1 is a covered sex offense for purposes of § 4B1.5(b)(1). Rather, he argues that K.W.'s testimony that Red Elk engaged in "prohibited sexual conduct" was uncorroborated and should not be believed. But the court found K.W.'s testimony to be credible, and that assessment was not clearly erroneous. See Dowty, 37 F.4th at 492–93, 495 (upholding use of uncorroborated testimony of past sexual abuse to apply pattern enhancement).

Alternatively, Red Elk asserts that K.W.'s testimony was insufficient to support the enhancement because it "described a physical assault, not a sex crime." The Guidelines define "prohibited sexual conduct" as, in part, "any offense described in 18 U.S.C. §§ 2426(b)(1)(A) or (B)." USSG § 4B1.5 comment. (n.4(A)). This includes attempted aggravated sexual abuse: "knowingly caus[ing] another person to engage in a sexual act . . . by using force against that other person . . . or attempt[ing] to do so." 18 U.S.C. § 2241(a); see also 18 U.S.C. § 2426(b)(1)(A); 18 U.S.C. Chapter 109A. According to K.W.'s testimony, Red Elk pushed her to the ground, tried to pull off her pants, and told her that she "want[ed] it." The district court did not clearly err in finding that this testimony established by a preponderance of the evidence an attempt to commit aggravated sexual abuse. See United States v. Brown, 702 F.3d 1060, 1064–65 (8th Cir. 2013) (upholding conviction for attempted

aggravated sexual abuse where defendant, without more, pushed victim onto bed, tried to remove her clothes, pulled her pants halfway down, and choked her).

We discern no error.

## C.

Finally, Red Elk argues that the district court erred in applying the use of force enhancement to Counts 2 and 3. See USSG § 2A.3.1(b)(1). Red Elk's conviction on Count 1 carried an adjusted offense level of 38. If the four-level use of force enhancement was not applied to either Count 2 or Count 3, the adjusted offense level for each of those counts would be level 30. Assuming these numbers, and applying the multiple count adjustment, see USSG Ch. 3, Pt. D, Red Elk's combined adjusted offense level would be 40. With the five-level enhancement under § 4B1.5(b)(1), his total offense level would be 45—still above the maximum allowable offense level of 43. Because "[a]n offense level of more than 43 is to be treated as an offense level of 43," USSG Ch. 5, Pt. A, comment. (n.2), Red Elk's total offense level would be the same with or without the force enhancement. "Where . . . an error in applying sentencing enhancements does not alter the defendant's total offense level, such an error is harmless." United States v. Stong, 773 F.3d 920, 926 (8th Cir. 2014).[9] Accordingly, any possible error in imposing the § 2A.3.1(b)(1) enhancements would be harmless.

We affirm the judgment of the district court.

---

[9]Red Elk does not contest these alternative calculations when arguing that harmless error does not apply. But his argument assumes the district court erred in applying both contested enhancements. Because we have found no error in applying the § 4B1.5(b)(1) enhancement, we consider only whether any error in the application of the § 2A.3(b)(1) enhancement is harmless.

STRAS, Circuit Judge, concurring in the judgment.

When it comes to other-bad-acts evidence, sexual-assault and child-molestation cases are different: different words in different rules for a different situation. *Compare* Fed. R. Evid. 413(a), 414(a), *with id.* 404(b)(1); *see United States v. LeCompte*, 131 F.3d 767, 770 (8th Cir. 1997). One would expect different results too, but not in this circuit. We have turned the rules inside out. *See United States v. Harrison*, 70 F.4th 1094, 1098–99 (8th Cir. 2023) (Stras, J., concurring in the judgment).

Ordinarily, "propensity evidence is out of bounds" because the government may not use "another bad act to show that an individual is likely to do the same thing again." *United States v. Vaca*, 38 F.4th 718, 721 (8th Cir. 2022); *see* Fed. R. Evid. 404(b)(1) (stating that another bad act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"). It is admissible, however, for a host of other "purpose[s]," like proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Just not to tell the jury that "[o]nce a criminal, always a criminal." *Harrison*, 70 F.4th at 1098 (Stras, J., concurring in the judgment). Or at least that is how it is supposed to work. *See id.*

The exact opposite is true in sexual-assault and child-molestation cases. *See* Fed. R. Evid. 413(a), 414(a). With those, the same types of crimes are admissible "on *any matter* to which [they are] relevant," propensity included. *Id.* (emphasis added); *see LeCompte*, 131 F.3d at 769–70. Indeed, we used to recognize that "prior offenses for sexual assault [and child molestation are] generally admissible." *United States v. Crawford*, 413 F.3d 873, 875–76 (8th Cir. 2005).

About 15 years ago, the landscape changed. In *United States v. Rodriguez*, 581 F.3d 775 (8th Cir. 2009), we held for the first time that "relevant sexual assault[s]" are "one[s] committed in a manner *similar to the charged offense*," *id.* at

-11-

796 (citing *Crawford*, 413 F.3d at 875–76) (emphasis added), a non-textual limitation apparently borrowed from cases addressing the admissibility of general bad-acts evidence under Rule 404(b), *see, e.g.*, *Harrison*, 70 F.4th at 1097 (requiring "similar[ity]" to admit a prior act of "unlawfully possessing a firearm . . . as a felon"). Until then, we had always held that similar crimes were relevant in the sex-crimes context, *see Crawford*, 413 F.3d at 876 (citing *United States v. Gabe*, 237 F.3d 954, 959 (8th Cir. 2001)), but never that relevance *required* similarity. Under *Rodriguez*, dissimilar sex crimes became categorically irrelevant. *See United States v. Crow Eagle*, 705 F.3d 325, 327 (8th Cir. 2013) (per curiam) ("Propensity evidence is admissible if the defendant's conduct is similar to the charged conduct . . . .").

Relevance, a low bar, is not so strict. "*[A]ny* tendency to make a fact [of consequence] more or less probable than it would be without the evidence" is all it takes. Fed. R. Evid. 401(a)–(b) (emphasis added). To state the obvious, a history of sex crimes makes it more "likely" that the defendant committed the same crime again. *United States v. Ahmed*, 119 F.4th 564, 568 (8th Cir. 2024) (quoting *United States v. Foley*, 740 F.3d 1079, 1087 (7th Cir. 2014)); *see Gabe*, 237 F.3d at 959. In fact, it is propensity evidence's *strong* relevance that justifies keeping it out in most situations. *See Michelson v. United States*, 335 U.S. 469, 475–76 (1948) (noting that propensity evidence can be so "probative" as to "overpersuade" a jury). Propensity may be *especially* relevant for sexual assaults and child molestations, but that is the point. "*[A]ny* other sexual assault[s]" and "child molestation[s]" offered to show propensity are relevant, regardless of how similar they are to the current crime.[10] Fed. R. Evid. 413(a), 414(a) (emphasis added); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("[R]ead naturally, the word 'any' has an expansive

---

[10]Other courts analyze the issue this way. *See United States v. Schaffer*, 851 F.3d 166, 178 (2d Cir. 2017); *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008); *United States v. Rogers*, 587 F.3d 816, 821 (7th Cir. 2009); *United States v. Redlightning*, 624 F.3d 1090, 1120 (9th Cir. 2010); *United States v. Mann*, 193 F.3d 1172, 1173 (10th Cir. 1999); *United States v. McGarity*, 669 F.3d 1218, 1244 (11th Cir. 2012), *abrogated on other grounds by Paroline v. United States*, 572 U.S. 434 (2014).

meaning, that is, 'one or some indiscriminately of whatever kind.'" (citation omitted)). Congress, after all, has said so in Rules 413 and 414. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 320935(a), 108 Stat. 1796, 2135–37; *see also LeCompte*, 131 F.3d at 769 (describing them as "general rules of admissibility" (citation omitted)).

Our focus on "similar[ity]" has caused problems. *Rodriguez*, 581 F.3d at 796. When it comes to non-sex crimes, it is an excuse to let in too much. *See Harrison*, 70 F.4th at 1097; *id.* at 1098 (Stras, J., concurring in the judgment). With sex crimes, it is a reason to let in too little. Or it probably would be, if we applied it with any rigor. Instead, we usually squint really hard to find some similarities. *See, e.g.*, *United States v. Sanchez*, 42 F.4th 970, 975 (8th Cir. 2022); *Crow Eagle*, 705 F.3d at 327–28.

This case is as good an example as any. Red Elk committed sex crimes years apart, one outside and one inside. One was completed, the other just an attempt. One involved a significant age difference between Red Elk and the victim, while the other did not. One involved a family member by marriage, the other did not. It is hard to see many similarities between them. If we were being honest, we would do away with the "counter-textual," hollowed-out notion of similarity we apply these days. *Harrison*, 70 F.4th at 1099 (Stras, J., concurring in the judgment). Better to return to the pre-*Rodriguez* view of "relevan[ce]" that aligns with the text. Fed. R. Evid. 413(a), 414(a).

To the extent there is a place for measuring similarity, it must be when district courts balance probative value and unfair prejudice under Rule 403. If the prior sex crime is so dissimilar to the charged one that it has only weak "probative value" and there is strong "prejudice" from introducing it, then the district court "*may*" refuse to admit it. Fed. R. Evid. 403 (emphasis added); *see id.* 413(c), 414(c) (noting that Rules 413 and 414 do not "limit the . . . consideration of evidence under any other rule"). Our pre-*Rodriguez* cases followed this route for exclusion, *see Crawford*, 413 F.3d at 875; *Gabe*, 237 F.3d at 959; *LeCompte*, 131 F.3d at 769–70, which left

the "broad[est]" possible "discretion" exactly where it should be: with the judge trying the case, *United States v. Ridings*, 75 F.4th 902, 906 (8th Cir. 2023).

Applying the pre-*Rodriguez* approach yields a simple answer in this case. K.W.'s testimony was evidence of "*any* other sexual assault" and "relevant" because it showed that Red Elk has a propensity to commit sexual assaults. Fed R. Evid. 413(a) (emphasis added); *see Michelson*, 335 U.S. at 475–76; *Ahmed*, 119 F.4th at 568. Nothing about admitting it was "unfair[ly] prejudic[ial]," so there was no abuse of discretion in allowing the jury to hear it. *Ridings*, 75 F.4th at 906; *see* Fed. R. Evid. 403. I would start and end there.

———————————————