# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1189
_____

United States of America

*Plaintiff - Appellee*

v.

Canku Martinez

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Central
_____

Submitted: October 24, 2025
Filed: March 11, 2026
_____

Before SMITH, KELLY, and GRASZ, Circuit Judges.
_____

KELLY, Circuit Judge.

In February 2024, Canku Martinez was indicted on five counts. Counts 1–3 arose from allegations of a sexual assault against Martinez's half-sister, Keely Bordeaux, and Counts 4–5 arose from allegations of a sexual assault against a minor, N.W. After a trial, Martinez was acquitted on Counts 1–3 (Bordeaux counts) and found guilty on Counts 4–5 (N.W. counts). Martinez appeals, arguing that joinder of

the counts was unfairly prejudicial and the evidence was insufficient to convict him on Counts 4 and 5. After careful review, we affirm.

## I.

The jury heard testimony from several witnesses, including Bordeaux, N.W., and Martinez himself. As to the allegations involving Bordeaux, Martinez and Bordeaux's testimony aligned in part. They agreed that on April 28, 2023, Martinez visited Bordeaux outside her home around 3:00 a.m. Bordeaux got into Martinez's car and the two remained parked while they talked for over an hour. After that point, their stories diverged.

According to Bordeaux, Martinez then asked her for a massage, held a handgun to her temple, and drove her to Antelope Dam. He told her to take off her clothes and sexually assaulted her over a period of approximately two hours before driving her home. Martinez told her he would send her money so that she would not tell anyone about what he did to her. Bordeaux testified that she had not interacted with Martinez since. On cross examination, defense counsel elicited testimony from Bordeaux about a series of inconsistent statements she made to various law enforcement officers prior to trial.

According to Martinez, while he and Bordeaux were parked in front of Bordeaux's home, she repeatedly used—and offered him—THC and cocaine, even after he asked her multiple times to "put it away or take it back inside." He said he did not want to use any drugs because he had decided to join the military and knew he would be subject to drug testing. He threatened to call the police if Bordeaux did not get the drugs "out of [his] truck." In response, Bordeaux said that if he called the police, she would tell them that he "was going to touch her or rape her." Martinez immediately apologized.

Bordeaux then asked Martinez to drive to Antelope Dam because she did not want her grandmother to come outside and see her using cocaine. He drove to the

Dam, where they remained for about an hour and a half. Martinez then drove Bordeaux home. Before she got out of his car, Bordeaux told Martinez that he had to pay her to "give her reassurance that [he would not] call the cops on her," and "if [he] didn't pay her [] $250, then she would go to the cops and . . . [say t]hat [he] raped her." Martinez sent Bordeaux two payments on that date, totaling $250. Bordeaux later asked Martinez for more money, at which point Martinez contacted law enforcement and explained what happened. Martinez did not hear from the police department or Bordeaux after that.

The jury acquitted Martinez on the Bordeaux counts.

As with Bordeaux, Martinez's testimony about his interactions with N.W. mirrored N.W.'s, up to a point. On October 28, 2023, Martinez and N.W. attended a Halloween party at Whipple Ranch. Martinez did not drink that night because he was a designated driver. Two of his friends, including N.W.'s cousin, asked him for a ride home. After he dropped them off, Martinez saw that he had received Facebook messages from N.W. asking whether her cousin had arrived home safely. Martinez and N.W. exchanged a few messages, and then N.W. asked Martinez to drive her home, too. He drove back to the party to pick her up. From there, their testimonies differed in some significant ways.

N.W. testified that Martinez returned to the party, picked her up, and drove her home. When she got inside, she realized she had left her phone charger at the party. She messaged Martinez to come back and take her to get her charger, which he did. After she retrieved her charger, Martinez drove her to Rosebud Dam instead of to her house. N.W. had not asked to go to Rosebud Dam, but "didn't think of it too much." After spending some time at the dam, she asked Martinez to take her home. Martinez drove away from the dam but then pulled over alongside the road at a turnoff. He asked her if she ever kissed her cousin's friends, and she told him no because they were older than her.

According to N.W., Martinez then pulled a knife from the backseat. He put the knife to her neck and told her to take off her clothes, or else he would cut them off. Martinez removed his pants and said he would not take her home unless she "did something with him." He pulled N.W. on top of him and put his penis into her vagina. N.W. testified that when she tried to get away, he choked her, opened the door, and pushed her out of the car. When she started to walk away, he pushed her into the backseat. There, he slapped her and put his penis into her vagina again, before ejaculating on her leg. After they both got dressed, N.W. found her phone under the back seat and messaged a friend, "I don't know what happened to me just now." N.W. testified that Martinez told her to delete the Facebook messages between him and N.W. and not to tell anyone what happened. He drove her home, and they did not speak again.

Martinez testified that he returned to the party to pick up N.W., drove her directly home, and confirmed that she got into her house safely before leaving. Martinez planned to return to the party, but he received a message from N.W. that she forgot her charger. Martinez drove back to N.W.'s home and took her to the party to pick up her charger. After 10–15 minutes, N.W. found it and told Martinez she was ready to go. They then got back into Martinez's car.

Martinez said that N.W. asked him to drive slowly or pull over so she could finish a blunt—which he described as a marijuana joint with cigar wrapping—before she got home, because she did not want her mother to know she was smoking. N.W. directed him to Rosebud Dam, where they sat listening to music. At some point, N.W. pulled him in for a kiss. Martinez told N.W. he had a girlfriend, but ultimately, he and N.W. had consensual sex. Afterwards, when N.W. asked, Martinez told her they would have no future relationship. According to Martinez, N.W. "seemed kind of mad" when he told her this. He asked N.W. to let him tell his girlfriend himself "that he cheated on her," and N.W. agreed. N.W. offered to delete their messages, and he said "[t]hat would be very helpful." Martinez testified that, in retrospect, he believed N.W. made the allegations because he chose his girlfriend over her.

The jury found Martinez guilty on the N.W. counts: one count of aggravated sexual abuse, in violation of 18 U.S.C. §§ 1152, 2241(a), 2246(2), and one count of kidnapping, in violation of 18 U.S.C. §§ 1152, 1201(a)(2).

## II.

### A.

On appeal, Martinez argues that joinder of the five counts against him was unfairly prejudicial under Federal Rule of Criminal Procedure 14. Federal Rule of Criminal Procedure 8 allows for joinder of multiple offenses into a single indictment. Rule 14, however, provides for relief from joinder if "consolidation [of offenses] for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14. "There is a strong presumption against severing properly joined counts." United States v. Robinson, 781 F.3d 453, 461 (8th Cir. 2015) (quoting United States v. Garrett, 648 F.3d 618, 626 (8th Cir. 2011)). "Only in an unusual case . . . will the prejudice resulting from a joint trial be substantial enough to outweigh the general efficiency of joinder." United States v. Huggans, 650 F.3d 1210, 1221 (8th Cir. 2011) (quoting United States v. Kirk, 528 F.3d 1102, 1107 (8th Cir. 2008)).

Martinez concedes that he did not seek relief from prejudicial joinder at the district court.[1] As a result, we review for plain error. United States v. Brown, 560 F.3d 754, 766 (8th Cir. 2009). To demonstrate plain error from a failure to sever the Bordeaux and N.W. counts, Martinez must identify a Rule 14 violation affecting his substantial rights as well as "some extraordinary reason for us to reverse for such error despite [his] failure to raise the issue in the trial court." Id. (quoting United States v. Thornberg, 844 F.2d 573, 575 (8th Cir. 1988)) (alteration in original).

---

[1]The Honorable Eric C. Schulte, United States District Judge for the District of South Dakota.

A defendant is prejudiced in violation of Rule 14 when they are "deprived of an appreciable chance for an acquittal, a chance that the defendant would have had in a severed trial." United States v. Goodhouse, 81 F.4th 786, 791 (8th Cir. 2023) (quoting Garrett, 648 F.3d at 625–26). A joint trial does not prejudice a defendant if "one crime would be probative and admissible at the defendant's separate trial of the other crime." Id. (quoting United States v. Little Dog, 398 F.3d 1032, 1037 (8th Cir. 2005)); see also United States v. Whitfield, 140 F.4th 978, 986 (8th Cir. 2025) (affirming district court's refusal to sever because Whitfield could not show that evidence from one count would have been inadmissible in a severed trial for two other counts).

"In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." Fed. R. Evid. 413(a); see also United States v. Red Elk, 132 F.4th 1100, 1105 (8th Cir. 2025). Such evidence must be relevant and cannot be more prejudicial than it is probative. Red Elk, 132 F.4th at 1105; United States v. Mound, 149 F.3d 799, 800 (8th Cir. 1998) ("In considering evidence offered under Rules 413, 414, and 415, a trial court must still apply Rule 403[.]"). A relevant sexual assault for the purpose of Rule 413 is one "committed in a manner similar to the charged offense." Red Elk, 132 F.4th at 1105 (quoting United States v. Sanchez, 42 F.4th 970, 975 (8th Cir. 2022)); Fed. R. Evid. 413(a) (instructing that other sexual assault "evidence may be considered on any matter to which it is relevant").

Evidence of the Bordeaux allegations would be admissible at a separate trial for the N.W. counts because the evidence was relevant and not unfairly prejudicial. Both incidents involved allegations that Martinez had a female in his vehicle alone at night, drove to nearby dams, displayed a weapon, and forced the female to submit to sex under threat of injury or death before driving them home. Differences in the victims' ages, their relationship to Martinez, or their level of intoxication are not enough in this case to render admission of the evidence an abuse of discretion. See, e.g., Red Elk, 132 F.4th at 1105–106. Martinez argues this evidence was unduly prejudicial because it involved incest. But absent an undue focus or emphasis on this

fact, the familial relationship between Martinez and Bordeaux alone is not sufficient to show prejudicial joinder.[2] Cf. Sanchez, 42 F.4th at 973, 975 (finding no abuse of discretion in admission of Rule 413 and Rule 414 evidence that defendant sexually abused his biological daughter, without directly addressing the prejudicial impact of allegations of incest).

We find no plain error that would entitle Martinez to a new trial.[3]

B.

Martinez also argues the jury lacked sufficient evidence to convict him. We review this issue de novo, "viewing the evidence most favorably to the jury verdict, resolving conflicts in favor of the verdict, and giving it the benefit of all reasonable inferences. The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find [the defendant] guilty beyond a reasonable doubt." United States v. Robinson, 781 F.3d 453, 465 (8th Cir. 2015) (internal quotations and citations omitted). Put differently, we will reverse "only if 'no reasonable jury could have found [the defendant] guilty beyond a reasonable

---

[2]We note that Martinez points to nothing in the record to suggest that his familial relationship with Bordeaux was, in fact, highlighted or argued to the jury at the joint trial.

[3]Martinez's split verdict does not alter the analysis. If anything, our case law suggests that a split verdict itself is a strong indication that joinder was not prejudicial. A key concern with joinder is that "the jury might use evidence of one crime to infer guilt on the other or [] the jury might cumulate the evidence to find guilt on all crimes when it would not have found guilt if the crimes were considered separately." Huggans, 650 F.3d at 1221 (quoting United States v. Davis, 103 F.3d 660, 676 (8th Cir. 1996)). But the fact that "the jury convicted [the defendant] of only one count but not the other[s] indicates that [the jury] was able to make an appropriate determination based on the evidence." Sanchez, 42 F.4th at 976 (quoting United States v. Cavanaugh, 30 F.4th 1139, 1144 (8th Cir. 2022)).

doubt.'" United States v. Johnson, 39 F.4th 1047, 1052 (8th Cir. 2022) (quoting United States v. Trotter, 721 F.3d 501, 504 (8th Cir. 2013)). Further,

> [a] jury's credibility determinations are well-nigh unreviewable on appeal, even when the standard of proof is beyond a reasonable doubt. And even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict. We only disturb the verdict in extreme circumstances, such as when the witness testified to facts that are physically impossible. Minor inconsistencies . . . do not warrant acquittal because it was within the jury's province, as the finder of fact, to resolve these inconsistencies and to accord what weight it desired to the testimony.

Goodhouse, 81 F.4th at 790 (citation modified); see also Johnson, 39 F.4th at 1052.

Martinez's argument[4] is rooted in N.W.'s credibility. He points to N.W. "creating ways to spend time with" him, her access to a cell phone when they were together at the dam, her substance use, and the lack of injuries one would expect to see if she had suffered an assault in the manner she described. At various points in her testimony, N.W. also stated that she could not remember particular facts about the events in question. Some of the evidence, as well as her faulty memory, may have detracted from N.W.'s credibility, but Martinez points to nothing in her testimony that was "physically impossible." See Goodhouse, 81 F.4th at 790. And any questions about the consistency or veracity of N.W.'s testimony can be resolved by viewing the evidence in the light most favorable to the verdict. See United States v. DeCoteau, 630 F.3d 1091, 1097 (8th Cir. 2011). Based on the verdicts, the jury credited N.W.'s version of events—and that credibility determination is "well-nigh unreviewable on appeal." Goodhouse, 81 F.4th at 790. N.W.'s "testimony alone can be sufficient to support a guilty verdict," and this is not an "extreme circumstance[]" that demands we disturb the jury's decision. Id.

---

[4]Martinez does not make separate sufficiency arguments for his two convictions.

## III.

We affirm the judgment of the district court.

_____