# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1529
_____

United States of America

*Plaintiff - Appellee*

v.

Antone Little

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 16, 2026
Filed: May 15, 2026
_____

Before SMITH, BENTON, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Antone Little pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(8), and one count of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). He was sentenced to a 235-month term of imprisonment. On appeal, Little asserts the district court erred when it applied a four-level enhancement under USSG § 2D1.1(b)(13)(A) for knowingly

misrepresenting or marketing a substance containing fentanyl as another substance. Little also asserts the district court committed plain error when it found him ineligible for federal benefits under 21 U.S.C. § 862(a)(1)(C). We affirm the term of imprisonment imposed by the district court, but we vacate the permanent denial of federal benefits.

## I.  BACKGROUND

On March 14, 2023, St. Louis police received a tip from a confidential informant that "Ant," later identified as Antone Little, was distributing narcotics from a residence on Kennerly Avenue in St. Louis. The informant reported that Little would exit the residence from a rear door or side door, collect cash from customers, return to the residence to obtain the drugs, and exit the residence to provide the customers with narcotics. An investigative team surveilled the residence for two weeks and observed transactions as described by the confidential informant. On March 28, 2023, the investigative team conducted a controlled buy using the confidential informant. The informant bought $40 worth of crack cocaine from Little and also observed Little sell a woman fentanyl capsules. Detectives obtained a search warrant and three days later searched the residence. In the front room, they recovered a 9mm handgun, a shotgun, a revolver, two bags of empty pill capsules, a pill capper, narcotics, and a blender with white residue. In Little's bedroom, detectives found 1,633 yellow tablets marked with "C <>230" containing 854.24 grams of fentanyl.

While the detectives were searching the residence, the lead investigator, Detective Ryan Drago, interviewed Little. Little told Detective Drago that he purchased the yellow tablets for approximately $1,000. According to Detective Drago's report, Little also said the yellow tablets were imitation oxycodone pills laced with fentanyl and methamphetamine. The report quoted Little as saying, "Hey if you are dumb enough to believe I am selling Oxycodone at this cheap of a price then you stupid as hell. If they overdose, then oh well. That is part of the game."

Little was indicted on one count of felon in possession of a firearm, one count of possession of a controlled substance with intent to distribute, and one count of possessing a firearm in furtherance of a drug trafficking crime. Little signed a plea agreement in which he pled guilty to the first two counts. The plea agreement left open whether Little was subject to a four-level enhancement under USSG § 2D1.1(b)(13)(A) for knowingly misrepresenting or marketing a substance containing fentanyl as another substance.

At sentencing, Detective Logan Priddy testified that he helped execute the search warrant and heard portions of Detective Drago's interview of Little.[1] Detective Priddy testified to the contents of Detective Drago's report, including statements in the report that Little disputes making. Detective Priddy also testified that Little referred to the yellow pills as being "China yellow," which typically refers to fentanyl. Detective Priddy further explained the "C<>230" on the yellow pills indicates oxycodone whereas fentanyl usually is encapsulated in multi-colored gel capsules.

Little testified and denied making the statements in Detective Drago's report, although he also noted that he was under the influence of heroin during the interview. According to Little, he received the yellow pills from a man he did side work with who he knew as "Kevin." Little testified that Kevin found the yellow pills in a vacant building and asked Little to hold onto them because Kevin was homeless. Little also testified that he intended to give the yellow pills back to Kevin and that he did not intend to sell the drugs.

The district court found that Little knew the fake oxycodone pills in his possession were actually fentanyl and that he marketed them. The district court applied the four-level enhancement under § 2D1.1(b)(13)(A) and sentenced Little to a total of 235 months' imprisonment. The district court also deemed Little

---

[1]Detective Drago was not available to testify due to an out-of-state military deployment.

-3-

permanently ineligible for federal benefits. Little appeals the application of the four-level enhancement and his permanent ineligibility for federal benefits.

## II.    DISCUSSION

In reviewing a sentence for procedural error, we review the district court's factual findings to support an enhancement for clear error and the district court's interpretation of the Guidelines *de novo*. United States v. Hernandez Lopez, 24 F.4th 1205, 1208 (8th Cir. 2022). "Clear error exists only when we are left with the definite and firm conviction that a mistake has been committed." United States v. Red Elk, 132 F.4th 1100, 1105 (8th Cir. 2025) (quotation omitted).

First, Little asserts the district court clearly erred in finding that he made the statements quoted in Detective Drago's report. Specifically, Little contends the district court should not have considered Detective Drago's report, which was hearsay.[2] But a sentencing court is allowed to consider relevant information without regard to the rules of evidence that are generally applicable at trial. This includes considering hearsay or even double hearsay so long as the court has sufficient indicia of reliability to support the evidence's probable accuracy. United States v. Harris, 44 F.4th 819, 822 (8th Cir. 2022) (quoting USSG § 6A1.3(a)). In assessing the reliability of hearsay evidence, the district court considers factors such as "the consistency of the hearsay testimony, the timing and nature of the declarant's statements, and the witness's impressions of the declarant's demeanor, as well as other corroborating evidence." United States v. Campos, 79 F.4th 903, 916 (8th Cir. 2023) (quotation omitted). The reliability of evidence is left to the sound discretion of the trial court. Id.

Here, Detective Priddy's testimony corroborated Detective Drago's report. While Detective Priddy was not present for the entire interview, he observed some

---

[2]Little's statements to Detective Drago were not hearsay. See Fed. R. Evid. 801(d)(2).

of it and found Little to be "cooperative." Consistent with Detective Drago's report, Detective Priddy heard Little describe the pills as "China yellow," suggesting to Detective Priddy that Little knew the yellow pills were fentanyl and not oxycodone. Little himself testified at sentencing that he thought the yellow pills were fake because there were "too many pills to be real." He further acknowledged that someone purchasing one of the yellow pills would believe it to be oxycodone. Detective Priddy testified that fentanyl was cheaper than oxycodone, and Little corroborated Detective Priddy's testimony that oxycodone sold for about $20 per pill.

Little's attempts to discredit Detective Drago's report were unconvincing. Although Little denied making the statements in Detective Drago's report, he also admitted to being under the influence of heroin during his interview. To the extent Little testified that heroin did not alter his state of mind, the district court found his "testimony about the effects of heroin on him inconsistent, not credible, and quite dodgy." Further, Little denied telling Detective Drago that he paid approximately $1,000 for the yellow pills, but in his plea agreement, he admitted to making that statement.[3] Little's testimony that he was holding the yellow pills for a man who went by "Kevin" similarly strained credulity. Little knew almost nothing about the man he referred to as "Kevin" and even testified that he did not think "Kevin" was the man's real name. Even so, Little testified that he held onto the pills at great risk to himself and his family for no apparent reward, if his testimony is believed. The district court committed no error, clear or otherwise, when it credited Detective Drago's report.

Little next contends the district court erred in applying the enhancement because there was no evidence of an actual sale or misrepresentation by Little, but this Court has upheld the application of § 2D1.1(b)(13) without evidence of an actual

---

[3]In his plea agreement, Little specifically denied telling detectives the yellow pills were imitation oxycodone and denied making the quoted statement. Little, however, agreed that he "informed detectives that he purchased the yellow oval pills earlier that week for approximately one thousand dollars."

sale.  See United States v. Salinas, 132 F.4th 1083 (8th Cir. 2025).[4]  In Salinas, the defendant was convicted of possession with intent to distribute a controlled substance, which included fentanyl pills marked M-30 "that resembled oxycodone." Id. at 1086.  The defendant argued § 2D1.1(b)(13) did not apply because "no evidence exists that he 'represented or marketed the fentanyl pills as oxycodone.'" Id. at 1090.  This Court disagreed because "the quantity that Salinas possessed, the packages' markings, and the manner of wrapping demonstrated an intention to distribute to different customers."  Id. at 1091.

Similarly, the evidence here supports a conclusion that Little was marketing the imitation oxycodone even if the government could not point to a specific sale. Little admitted to possessing with intent to distribute fentanyl pills that were yellow and marked with "C<>230," resembling oxycodone.  See United States v. Matthews, 155 F.4th 845, 851 (6th Cir. 2025) (defining "marketing" as "the act of holding forth property for sale, together with activities preparatory thereto.") (quoting Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187 (1995)).  Little possessed a distribution amount of the imitation oxycodone pills and was observed selling other narcotics. Little admitted to purchasing the 1,633 pills for $1,000, but he knew the going rate for real oxycodone pills was "three for 60," indicating an intent to turn a profit by selling the fentanyl pills as oxycodone.  Little demonstrated a knowledge of the market for the pills by testifying that the "clientele base" was "from 13 to 27" and stating, "I can walk outside and sell them."  Notably, Little told Detective Drago, "Hey if you are dumb enough to believe I am selling oxycodone at this cheap of a price then you stupid as hell," which suggests that Little was selling the imitation oxycodone.  And Little's stated reason for possessing the imitation oxycodone pills—that he was holding them for a man named Kevin who he did not know—

---

[4]The district court in Salinas applied the two-level enhancement under § 2D1.1(b)(13)(B), rather than the four-level enhancement under § 2D1.1(b)(13)(A) that is applicable here.  The difference between the two enhancements is the *mens rea*—subsection (A) requires knowledge that the substance contains fentanyl while subsection (B) only requires a reckless disregard.  Because Little's *mens rea* is not at issue, that distinction is immaterial.

lacked credibility.  The district court did not err in applying § 2D1.1(b)(13) despite the lack of evidence of an actual sale.

Even if the district court had erred in applying the four-level enhancement, any error was harmless.  An erroneous Guidelines calculation is harmless when the district court "indicates it would have alternatively imposed the same sentence even if a lower guideline range applied."  United States v. Martinez, 821 F.3d 984, 989 (8th Cir. 2016).  Here, the district court explained that it "would impose the same sentence regardless of the objections and regardless of [its] findings as to the enhancements . . . ."  Still, the district court's "alternative sentence must be substantively reasonable."  Id.  In support of alternatively imposing the same sentence, the district court explained that Little "had a substantial amount of lethal doses [of fentanyl] in his possession, and he was protecting them with firearms." We find no abuse of discretion in the district court's sentencing decision.  See United States v. Cortez, 72 F.4th 1344, 1345 (8th Cir. 2023) (finding "fentanyl's unique lethality" supported an upward variance).

Finally, Little argues the district court plainly erred in finding him permanently ineligible for federal benefits.  The government concedes the district court plainly erred when it found Little permanently ineligible for federal benefits. Under 21 U.S.C. § 862(a)(1)(C), an individual convicted of an offense "consisting of the distribution of controlled substances" is permanently ineligible for federal benefits "upon a third or subsequent conviction."  Little, however, was convicted of possession with intent to distribute a controlled substance, not distribution of a controlled substance, and only one of his prior state convictions was for distribution of a controlled substance.[5]  See United States v. Phillips, 124 F.4th 522, 527 (8th Cir. 2024) (distinguishing possessing a controlled substance from distributing it when considering the denial of benefits under § 862(a)(1)(C)).  Incorrect application of § 862(a)(1)(C) constitutes plain error affecting the defendant's substantial rights.

---

[5]That conviction was expunged under Missouri law, but we need not decide the impact of the expungement.

-7-

Id. at 528–29. We reverse and vacate the district court's decision finding Little permanently ineligible for federal benefits.

## III.  CONCLUSION

We vacate the permanent denial of federal benefits under 21 U.S.C. § 862(a)(1)(C) but otherwise affirm the judgment of the district court.

_____